Argued and submitted October 3, 2007, decisions of Court of Appeals
affirmed February 28, 2008

MID-CENTURY INSURANCE COMPANY,
*Respondent on Review,*

*v.*

Elijah PERKINS,
*Petitioner on Review.*

(CC 04-1834-E7; CA A127522; SC S054652)

Dennis W. PHILLIPS,
*Petitioner on Review,*

*v.*

SAFECO INSURANCE COMPANY OF OREGON,
*Respondent on Review.*

(CC 0504-03584; CA A130265; SC S054660)
(Consolidated for Opinion)

179 P3d 633

Thomas N. Petersen, of Black Chapman Webber & Stevens, Medford, argued the cause for petitioner on review Perkins. Meagan A. Flynn, Preston Bunnell & Flynn, LLP, Portland, filed the brief for petitioner on review Perkins.

Thomas M. Christ, of Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondent on review Mid-Century Insurance Company. With him on the brief was Thomas W. Brown.

Randall J. Wolfe, of Randall J. Wolfe, PC, Lake Oswego, argued the cause and filed the brief for petitioner on review Phillips.

Barbara L. Johnston, of Brisbee & Stockton, LLC, Hillsboro, argued the cause and filed the brief for respondent on review Safeco Insurance Company of Oregon. With her on the brief was Matthew J. Yium.

Kathryn H. Clarke, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Assocation.

Joel S. DeVore, of Luvaas Cobb, Eugene, filed the brief for *amici curiae* Allstate Ins. Co., State Farm Mutual Auto Ins. Co., Country Mutual Ins. Co., American Family Ins. Co., and The Property Casualty Insurers Association of America.

DURHAM, J.

## DURHAM, J.

We consolidate in this opinion our review of two actions for the recovery of underinsured motorist (UIM) insurance benefits. In *Mid-Century Ins. Co. v. Perkins*, 209 Or App 613, 149 P3d 265 (2006), the Court of Appeals reversed a trial court order allowing the insured to recover UIM benefits. In *Phillips v. Safeco Ins. Co. of Oregon*, 209 Or App 815, 149 P3d 316 (2006), the Court of Appeals affirmed an order denying recovery of UIM benefits. Both cases center on the interpretation of ORS 742.502(2)(a) in light of this court's decision in *Bergmann v. Hutton*, 337 Or 596, 101 P3d 353 (2004). We now affirm both decisions of the Court of Appeals.

Before addressing the facts of these cases, we summarize the statutes that govern UIM benefits.[1] ORS 742.502(1) requires all motor vehicle liability policies issued in Oregon to provide uninsured motorist (UM) coverage, as defined by ORS 742.500(1):

> " 'Uninsured motorist coverage' means coverage within the terms and conditions specified in ORS 742.504 insuring the insured, the heirs or legal representative of the insured for all sums which the insured or they shall be legally enti- tled to recover as damages for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070."

ORS 742.502(2)(a) provides, in part:

> "* * * Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include under- insurance coverage for damages or death caused by acci- dent and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less

---

[1] All citations to ORS chapter 742 refer to the 2001 versions of the statutes, unless otherwise noted. At the time of Perkins's accident in 2001, and Phillips's accident in 2003, the legislature had last modified ORS 742.502 and ORS 742.504 in 1997. *See* Or Laws 1997, ch 808, §§ 1, 2. The legislature made minor amend- ments to those statutes in the 2003 session, but those amendments were not effec- tive until January 1, 2004, and, in any event, they do not appear to have any bear- ing on this case. *See* Or Laws 2003, ch 175, § 2; Or Laws 2003, ch 220, § 1.

than the insured's uninsured motorist coverage. Under-insurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."[2]

We now turn to the facts of these cases, none of which are in dispute. *Mid-Century Ins. Co.* involves a motor vehicle insurance policy that Mid-Century Insurance Company (Mid-Century) issued to Elijah Perkins and his mother in 1997.[3] The policy provided UM and UIM coverage up to a limit of $100,000 per person and $300,000 per occurrence. Perkins renewed the policy every six months until March 2002. The policy initially covered a 1979 Chevrolet Blazer but, in 1999, Perkins changed the policy to cover a 1986 Toyota pickup. Perkins moved to Seattle, Washington at some point thereafter and kept the Toyota in Washington, but never registered it there. In October 2001, Perkins sustained injuries in a car accident in Washington. The other driver, Gretchen Elster, was at fault. Elster had an automobile insurance policy that provided $100,000 of liability coverage. Perkins recovered that entire amount from Elster's policy. Perkins then sought UIM benefits from Mid-Century, claiming that the $100,000 that he had received from Elster did not cover his total damages from the accident. Mid-Century denied his claim and filed an action for a declaratory judgment stating that Perkins was not entitled to recover UIM benefits. Perkins counterclaimed for those benefits. Both parties filed cross motions for summary judgment.

---

[2] The legislature amended ORS 742.502(2)(a) in 2005 and 2007. Or Laws 2005, ch 235, § 1; Or Laws 2007, ch 287, § 2. That subsection now provides:

"A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. Uninsured motorist coverage shall include underinsurance coverage for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle with motor vehicle liability insurance that provides recovery in an amount that is less than the insured's uninsured motorist coverage. Underinsurance coverage shall be equal to uninsured motorist coverage less the amount recovered from other motor vehicle liability insurance policies."

[3] To avoid confusion, we refer to the parties by name rather than by the terms "plaintiff" and "defendant."

The trial court initially disposed of the matter as a choice of law question. Perkins argued that the law of the state where the accident occurred governed his eligibility for UIM benefits and that, under Washington law, Elster was an underinsured motorist because his damages exceeded the liability limits in Elster's policy. *See* Wash Rev Code 48.22.030(1).[4] Mid-Century argued that Oregon law governed the dispute and that, under Oregon law, Elster was not an underinsured motorist because the liability limits in her policy were equal to Perkins's own policy limits for UIM coverage. The trial court ruled that the policy was governed by Oregon law and, therefore, because Elster's liability policy limit was equal to Perkins's UIM policy limit, Perkins was not entitled to recover UIM benefits. On November 16, 2004, the court issued an order granting Mid-Century's motion for summary judgment.

On December 2, 2004, this court issued its decision in *Bergmann*. On December 7, Perkins filed a motion requesting reconsideration of his case in light of *Bergmann*. The trial court granted the motion and determined that *Bergmann* controlled the outcome of the case, stating:

> "The Supreme Court's analysis and interpretation of underinsured motorist coverage sets forth that it is determined by the damages suffered by the insured, not by the limits of the policy. Thus, in order that this policy not be less favorable to the insured than the provisions required by ORS 742.504, the determination of whether a vehicle is underinsured must start with a determination of the total damages the insured would be entitled to recover from the other driver, and a comparison of those damages to the policy limits. * * *

> "Thus, this court finds that the ruling in [*Bergmann*] affects the legal analysis of the issue raised by the parties in their original motions for summary judgment. * * * The court

---

[4] Wash Rev Code 48.22.030 provides, in part:

"(1) 'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover."

> therefore finds that, should defendant Perkins's damages exceed $100,000.00 (the amounts paid by the other driver), the policy taken out by defendant Perkins with plaintiff Mid-Century Insurance would require further underinsured coverage, up to the underinsured motorist policy limits of $100,000."

Accordingly, the trial court set aside its earlier order (aside from its ruling that Oregon law applies to the policy) and granted Perkins's motion for summary judgment. Mid-Century appealed.

The Court of Appeals reversed. *Mid-Century Ins. Co.*, 209 Or App at 636. The court affirmed the trial court's holding that Oregon law governed the policy. *Id.* at 620. The court then noted that, under ORS 742.502(2)(a), an insured may recover UIM benefits when he is injured in an accident and recovers, in the words of the statute, "an amount that is less than the insured's uninsured motorist coverage." After analyzing the text of ORS 742.502(2)(a), the court held that "an amount that is less than the insured's uninsured motorist coverage" referred to an amount that is less than the insured's *policy limit* for uninsured motorist coverage. *Id.* at 634-35. Because Perkins had recovered $100,000 from Elster, and $100,000 was the policy limit for his UM coverage, the court concluded that Perkins was not entitled to recover any further benefits from Mid-Century. *Id.* at 636. We granted Perkins's petition for review.

■ The facts of *Phillips* are similar to those of *Mid-Century Ins. Co.* Because *Phillips* comes before this court on a motion to dismiss under ORCP 21 A, "we assume the truth of all well-pleaded facts alleged in the complaint." *Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 163, 144 P3d 211 (2006). Safeco Insurance Company of Oregon (Safeco) issued Phillips an automobile insurance policy that included UIM and UM coverage with limits of $100,000 per occurrence.[5] In 2003, Phillips was injured in a car accident. The other driver,

---

[5] The complaint states that at the time of the accident, Safeco "was contracting" with Phillips "and/or [Phillips's] spouse" to provide an automobile insurance policy. For purposes of this appeal, however, the parties do not dispute that Safeco issued a policy to Phillips.

Alana Dianatkhah, was at fault. Dianatkhah had an automobile insurance policy with a liability limit of $100,000 and Phillips recovered that entire amount from her. Phillips then submitted a claim for UIM benefits to Safeco, claiming that the $100,000 that he had recovered from Dianatkhah's policy was less than the sum of his total damages. Safeco denied the claim. Phillips sued to recover the UIM benefits that he had claimed.

Safeco moved to dismiss the claim under ORCP 21 A(8), arguing that, in order to recover UIM benefits, Phillips had to plead that the $100,000 that he had recovered was less than his policy limit for his UIM coverage. Safeco asserted that because Phillips already had recovered an amount equal to the limit of his UIM coverage, he was not entitled to further recovery from Safeco. After examining the text of ORS 742.502(2)(a) and *Bergmann,* the trial court concluded that Safeco was correct and that Phillips had failed to plead ultimate facts sufficient to constitute a claim. Accordingly, the trial court dismissed Phillips's claim. The Court of Appeals affirmed, citing *Mid-Century Ins. Co.* We granted review. The primary issue on review is whether Oregon law allows the recovery of UIM benefits when an insured is injured in an accident and the insured's UIM policy limit is equal to the other motorist's liability policy limit, but the insured's damages exceed the other motorist's policy limit.

Before we reach that issue, however, Perkins presents another argument that is potentially dispositive of his claim. Perkins argues that the trial court and the Court of Appeals erred in ruling that Mid-Century's liability for UIM benefits is governed by Oregon law. Instead, Perkins contends that the law of the state where his accident occurred—Washington, in this case—determines the amount that he may recover. Because Perkins's argument and the holdings below are based on interpretations of Perkins's insurance policy, we review those interpretations for errors of law. *Holloway v. Republic Indemnity Co. of America,* 341 Or 642, 649, 147 P3d 329 (2006).

Perkins's argument is based on the following section of the policy, which appears under "**PART II—UNIN-SURED MOTORIST**":

**"Limits of Liability**

"The limits of liability shown in the Declarations apply subject to the following:

"1.   The limit for 'each person' is the maximum for **bodily injury** sustained by any person in any one **occurrence.** Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

"If the financial responsibility law of the place of the **accident** treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.

"2.   Subject to the limit for 'each person,' the limit for 'each **occurrence'** is the maximum combined amount for **bodily injury** sustained by two or more persons in any one **occurrence.**

"3.   *Subject to the law of the **state** of the **occurrence,** we will pay no more than these maximums regardless of the number of vehicles insured, **insured persons,** claims, claimants, policies, or vehicles involved in the **occurrence.***

"4.   Any amount payable by us to or for an **insured person** under this coverage shall be reduced by:

"a.   the amount payable to an **insured person** under Coverage **A—Bodily Injury;**

"b.   all amounts paid by or for the owner or operator of an **uninsured** or **underinsured motor vehicle** and any other person or organization who may be held legally liable for **bodily injury** to an **insured person**; and

"c.   the amount paid and the present value of all amounts payable on account of **bodily injury** under any workers' compensation law, disability benefits law or any similar law.

"5.   The amount of underinsured motorist coverage we will pay shall be reduced by the amount of any other **bodily injury** coverage available to any person or entity liable for the accident."

(Boldface in original; emphasis added.) Perkins argued that the third paragraph "clearly states that UIM benefits are to be paid according to the law of the state of the occurrence." The Court of Appeals rejected that argument and held that

paragraph 3 did not refer generally to the insurer's limits for UIM liability. Instead, according to the court, paragraph 3 referred back to paragraphs 1 and 2 and "addresses a particular issue that arises in situations involving multiple claimants," namely, the question of what the policy limits are when multiple insured vehicles, insured persons, claims, claimants, policies, or vehicles are involved in one accident. *Mid-Century Ins. Co.*, 209 Or App at 618-19. The court found no policy provision indicating that the parties had agreed on the applicable law for adopting the policy, and held that in the absence of such an election, "conflict of law principles dictate that Oregon law applies to the interpretation of the policy." *Id.* at 619. The court then noted that the policy was issued in Oregon under Oregon law when Perkins and his mother were Oregon residents, and that, at the time of the accident, Perkins's mother was still a resident of Oregon and the vehicle was registered in Oregon.[6] Citing *Davis v. State Farm Mut. Ins.*, 264 Or 547, 507 P2d 9 (1973), the court concluded that, under those facts, "Oregon has the more significant relationship to the insurance policy," and Perkins's entitlement to UIM benefits under the policy was governed by Oregon law. *Id.* at 620.

On review, instead of repeating his argument that paragraph 3 clearly states that Washington law governs the availability of UIM benefits, Perkins argues that paragraph 3 creates an ambiguity as to which state's law governs the determination of UIM benefits, and that this court must resolve any reasonable doubt about the intended meaning of that paragraph against the insurer. *Holloway*, 341 Or at 650 (citing *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 25, 22 P3d 739 (2001)).

■ We disagree. A phrase in an insurance policy is ambiguous only if, after a reviewing court examines the phrase's text and context, "two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continue[ ] to be reasonable * * *." *Hoffman Construction Co. v. Fred S. James*

---

[6] The Court of Appeals decision and the record below do not make it clear whether Perkins himself was a resident of Washington or Oregon at the time of the accident. In an affidavit filed with the trial court, Perkins declared that he had been living in Washington since May 2001, had found employment there, and had obtained a Washington driver's license.

& *Co.*, 313 Or 464, 470, 836 P2d 703 (1992). After reviewing the text and context of paragraph 3, the Court of Appeals concluded that it had nothing to do with the question of "whether defendant is entitled to UIM benefits when his UM/UIM policy limits are identical to the tortfeasor's policy limits." After reviewing the record, we conclude that the Court of Appeals was correct and that Perkins's interpretation of paragraph 3 is neither correct nor plausible when we view the policy in context. The introductory clause in paragraph 3 ("Subject to the law of the state of the occurrence, * * *") serves only to insure that the policy will remain in compliance with the law of the state where an accident occurs if that state's law requires the payment of benefits in excess of the "maximums" stated in the policy and regardless of the other circumstances set out in paragraph 3. We conclude that Perkins's contention that paragraph 3 is ambiguous in the way that we have described is not well taken. Furthermore, the Court of Appeals appears to have correctly determined that Oregon law governs Perkins's policy. Accordingly, we affirm that holding of the Court of Appeals.

■     We now turn to the question whether Perkins and Phillips are entitled to receive UIM benefits for their injuries. Both Perkins and Phillips claim that their injuries resulted from accidents with motorists who were "underinsured" under Oregon law.[7] They argue that, when an insured is involved in an accident with a motorist, the motorist is underinsured if the limit of his or her liability policy is less than the sum of the damages sustained by the insured. In short, they argue that a court must determine whether a motorist is underinsured by means of a "limits-to-damages" comparison. Because they both claim to have sustained damages beyond the limits of the liability policies of the motorists who caused their injuries, Perkins and Phillips conclude that they were injured by underinsured motorists and are entitled to collect UIM benefits.

---

[7] Perkins conceded before the Court of Appeals that he was not injured by an underinsured motorist as his policy defines that term. *Mid-Century Ins. Co.*, 209 Or App at 620. He argues, however, that the definition in his policy is invalid because it is inconsistent with the requirements of ORS 742.502 and ORS 742.504. Accordingly, Perkins and Mid-Century focus their dispute on what those statutes require Mid-Century to provide.

Mid-Century and Safeco, in response, assert that Perkins and Phillips are not entitled to UIM benefits because the motorists who caused their injuries were not underinsured. Mid-Century and Safeco argue that, under Oregon law, one determines whether a motorist is underinsured by comparing the limits of that motorist's liability policy to the limits of the insured's UM policy, *i.e.*, a "limits-to-limits" comparison. Because Perkins and Phillips both were injured by motorists whose liability policies had limits equal to the limits on Perkins's and Phillips's policies, Mid-Century and Safeco conclude that Perkins and Phillips were not injured by underinsured motorists and are not entitled to recover any benefits.

■       The question before this court is what the legislature intended by the requirement that insurers issuing policies in Oregon must provide "underinsurance coverage." As always, we begin our inquiry into legislative intent with the text of a statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The parties' arguments turn on this court's interpretation of ORS 742.502(2)(a), which provides:

> "A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death. Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

The third sentence of that paragraph states that UIM coverage is triggered by damages or death caused by accidents with motor vehicles that are insured for less than "the insured's uninsured motorist coverage." The meaning of that phrase determines the outcome of this case. If "the insured's uninsured motorist coverage" refers to the *damages* that the

insured is legally entitled to recover from a motorist, then a motorist is underinsured when those damages exceed the limits of his liability policy, as Perkins and Phillips claim. If "the insured's uninsured motorist coverage" refers to the *policy limits* on the insured's UM coverage, then a motorist is underinsured when those policy limits exceed the limits of his own liability policy, as Mid-Century and Safeco claim.

To determine the meaning of the phrase "the insured's uninsured motorist coverage," we first examine the statutory definition of the phrase "uninsured motorist coverage" in ORS 742.500(1), which we again quote to aid our analysis:

> " 'Uninsured motorist coverage' means coverage within the terms and conditions specified in ORS 742.504 insuring the insured, the heirs or legal representative of the insured for all sums which the insured or they shall be legally entitled to recover as damages for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle in amounts or limits not less than the amounts or limits prescribed for bodily injury or death under ORS 806.070."

Perkins and Phillips claim that the phrase "all sums which the insured * * * shall be legally entitled to recover as damages for bodily injury" in ORS 742.500(1) reveals that "uninsured motorist coverage" refers to the insured's total damages arising from an accident and not to the insurer's limit of liability for uninsured motorist coverage. The text of ORS 742.500(1) undermines that claim somewhat. ORS 742.500(1) defines uninsured motorist coverage as coverage "in amounts or limits not less than the amounts or limits prescribed" under ORS 806.070.[8] In other words, ORS 742.500(1) presumes that an insurer will provide uninsured motorist coverage only up to stated limits, and sets minimum limits on that coverage.

Perkins and Phillips insist, however, that when the legislature uses the term "coverage," it intends to refer to the

---

[8] ORS 806.070(2) requires minimum limits of "$25,000 because of bodily injury to or death of one person in any one accident" and "$50,000 because of bodily injury to or death of two or more persons in any one accident * * *."

insured's damages arising from an accident without reference to the insurer's limits of liability. Perkins and Phillips claim that this court's decision in *Bergmann* interpreted "coverage" in a way that mandates that reading of that term. Accordingly, we review *Bergmann* to determine if it supports that claim.

Like Perkins and Phillips, the plaintiff in *Bergmann* had an automobile insurance policy that provided UIM coverage with a limit of $100,000. She was severely injured in an automobile accident caused by a driver who had a policy with a liability limit of only $25,000. After recovering the limits of the other driver's policy and receiving $107,652 in workers' compensation benefits, the plaintiff made a claim for damages under the UIM provision of her insurance policy, claiming that her total damages exceeded the amount of her recovery by over $500,000. The insurer denied the claim, asserting that it was entitled to reduce the amount owed to the plaintiff by the amounts that she had received from workers' compensation and from the other driver. Because those amounts totaled over $100,000, the insurer maintained that it owed the plaintiff nothing. The plaintiff filed an action for breach of contract, the insurer moved for summary judgment, and the trial court granted the motion. The Court of Appeals affirmed without opinion.

This court reversed the grant of summary judgment and held that the plaintiff could still recover UIM benefits despite her receipt of workers' compensation. The case centered on the interpretation of ORS 742.504(7)(c), which provided:

"Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:

"(A) All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy; and

> "(B) The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law, disability benefits law or any similar law."

The plaintiff contended that the "amount payable under the terms of this coverage" referred to the insured's total damages, while the insurer maintained that that term referred to the policy's liability limit. *Bergmann*, 337 Or at 603. We held that the plaintiff was correct. We based that holding on the observation that, for purposes of ORS 742.504(7)(c), there is a difference between an amount that is payable under terms of "coverage" and an amount payable under terms of a "policy." A "policy" refers to "the specific contract between the insurer and the insured," and includes limits on the insurer's liability. *Bergmann*, 337 Or at 604. "Coverage" refers to "the universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy[,]" and does not include limits on the insurer's liability. *Id.* We concluded that, under ORS 742.504(7)(c), the "amount payable under the terms of this coverage" is equal to all sums that the insured is "legally entitled to recover" as a result of bodily injury arising from an accident with an uninsured or underinsured motorist, *i.e.*, the insured's damages.[9] *Id.* at 610.

Perkins and Phillips contend that *Bergmann* requires this court to hold that, in ORS 742.502(2)(a), the phrase "an amount that is less than the insured's uninsured motorist coverage" refers to an amount that is less than the insured's damages. First, they point out *Bergmann*'s holding that the term "coverage" does not include limits on an insurer's liability. If that term does not include those limits in one portion of the statutes governing uninsured motorist coverage, they reason, it should not include those limits in another. Accordingly, "the insured's uninsured motorist coverage" cannot refer to the insured's policy limits. Second, Perkins and Phillips argue that, if this court were to accept Mid-Century's and Safeco's argument that "an amount that is less than the insured's uninsured motorist coverage" refers

---

[9] The holding was based on ORS 742.504(1)(a), which requires the insurer to pay "all sums which the insured * * * shall be legally entitled to recover as general and special damages" for bodily injury resulting from an accident with an uninsured vehicle. *Bergmann*, 337 Or at 605.

to an amount that is less than the insured's policy limit, then an inconsistency in the statutes would result. The term "coverage" would incorporate limits on the insurer's liability in ORS 742.502(2)(a), but not in ORS 742.504(7)(c). Again, Perkins and Phillips note that this court assumes that the same term has the same meaning throughout a statutory scheme, and thus they conclude that "coverage" must mean the same thing in ORS 742.502(2)(a) and ORS 742.504(7)(c).

■    We disagree. Perkins and Phillips are correct to assert that "[w]hen the legislature uses the identical phrase in related statutory provisions that were enacted a * * * part of the same law, we interpret the phrase to have the same meaning in both sections." *Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005). However, the statutory phrase that was at issue in *Bergmann* is not identical to the phrase that is at issue in the present case. *Bergmann* concluded that, in ORS 742.504(7)(c), the phrase "amount payable under the terms of this coverage" refers to an insured's total damages. *Bergmann*, 337 Or at 605. ORS 742.502(2)(a), however, asks whether a vehicle is insured for "an amount that is less than the insured's uninsured motorist coverage," not an amount that is less than *the amount payable* under the insured's uninsured motorist coverage. *Bergmann* stated that the latter phrase refers to an insured's damages, but made no such statement regarding the phrase quoted from ORS 742.502(2)(a). Accordingly, we need not assume that each phrase means the same thing.

■    Perkins and Phillips also argue that "uninsured motorist coverage" must refer to an insured's damages and not to his policy limits because, as we stated in *Bergmann*, terms of coverage do not include limits on an insurer's liability. 337 Or at 604. "Coverage," Perkins and Phillips argue, must mean the same thing in both ORS 742.504(7)(c) and ORS 742.502(2)(a). We disagree. We will assume that the same word has the same meaning in related statutory provisions, but we are not bound by that assumption if an examination of the text and context of the statute reveals that the word, in fact, does have more than one meaning. *See Enertrol Power Monitoring Corp. v. State of Oregon*, 314 Or 78, 84, 836 P2d 123 (1992) ("The legislature's definition of a term made applicable to one portion of the statutes does not control on

the meaning of the term in another portion of the statutes."). Moreover, we do not read the word "coverage" in a vacuum, but in the context of the statutory text that surrounds it. *See Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004) (illustrating principle). In this case, that context gives us several reasons not to agree with Perkins and Phillips.

First, we did not define "coverage" as "damages" in *Bergmann*. We held that coverage refers to the external factors, *i.e.*, "people, vehicles, and events, that trigger an insurer's obligation to pay under the policy." *Bergmann*, 337 Or at 604. Nothing in that statement indicates that "coverage" refers only to the *amount* that the insurer is obligated to pay. As mentioned above, the phrase "amount payable under the terms of this coverage" designated that amount.

Second, were we to assume that "uninsured motorist coverage" means "damages," then the statutory provision at issue would become nonsense. The third sentence of ORS 742.502(2)(a) provides:

> "Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage."

Because the phrase "uninsured motorist coverage" appears at both the beginning and end of that sentence, reading that phrase to refer to the insured's damages would give the sentence the following meaning:

> "[The insured's damages] larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than [the insured's damages]."

Perkins and Phillips offer no explanation for why an insured's *damages* would include "underinsurance coverage" for damages, or why his entitlement to *damages* would depend on the amount of insurance on the motor vehicle that injured him. At best, that interpretation of ORS 742.502(2)(a)

results in a circular statement that an insured's damages will include his damages. This court assumes that the legislature did not intend for any part of its enactments to convey that kind of contradictory message. *See Bolt v. Influence, Inc.*, 333 Or 572, 581, 43 P3d 425 (2002) (discussing principle). The redundancy and confusion that follow from the assumption that "uninsured motorist coverage" refers to "damages" suggest that, in this context, that is not the phrase's intended meaning.

Third, the first sentence of ORS 742.502(2)(a) establishes that, within that subsection, "coverage" *does* include limits on an insurer's liability:

> "A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits."

That sentence requires a "policy" to have the same "limits" for uninsured motorist "coverage" that the policy places on bodily injury liability "coverage." As mentioned in *Bergmann*, a "policy" ordinarily includes limits on an insurer's liability, while "coverage" does not. 337 Or at 604. The premise of that sentence, however, is that a policy provides coverage and, in that context, coverage has limits. The second sentence of that subsection also concerns limits: "The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death."

The two sentences just examined strongly suggest that, when the third sentence mentions "coverage," it refers to coverage within the context of a policy. Therefore, contrary to Perkins's and Phillips's assertions, the phrase "uninsured motorist coverage" can incorporate the limits on an insurer's liability without creating any inconsistency with *Bergmann*. The statutory subsection at issue in *Bergmann* contained no wording indicating that the "coverage" that it referred to was subject to any kind of "limits," while the first two sentences of ORS 742.502(2)(a) establish that the stated limits do apply to and govern "coverage." Viewed in that light, the third sentence effectively reads:

> "Uninsured motorist coverage [under a given policy with limits] larger than the amounts required by ORS 806.070

shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage [under that policy]."

An "amount that is less than the insured's uninsured motorist coverage" refers to an amount that is less than the insured's uninsured motorist coverage as the terms of the policy limit that coverage. That interpretation does not create any inconsistency with *Bergmann* and avoids the same problems of confusion and surplusage that arise when we interpret "uninsured motorist coverage" to mean "damages."

Finally, the statutory context of ORS 742.502(2)(a) also supports Mid-Century's and Safeco's argument, because related statutory provisions use limits-to-limits comparisons to determine the required extent of "coverage." ORS 742.502(3) also uses the term "coverage" to refer to coverage in the context of a policy that provides limits on that coverage:

"The insurer issuing such policy may offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS 806.070 and in excess of the limits provided under the policy for motor vehicle bodily injury liability insurance. Offers of uninsured motorist coverage shall include underinsurance coverage for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle with motor vehicle liability insurance that provides recovery in an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other motor vehicle liability insurance policies."[10]

That subsection allows an insurer issuing a "policy" to offer "coverage" that is greater than the "amounts" required under

---

[10] The legislature has made minor amendments to the subsection since 2001. *See* Or Laws 2007, ch 287, § 2, which altered the last sentence of the subsection to read: "Underinsurance *coverage* shall be equal to uninsured motorist *coverage* less the amount recovered from other motor vehicle liability insurance policies." (Emphases added.) Those later amendments do not affect our analysis in this case.

ORS 806.070 and the "limits" provided for bodily injury liability under the policy. If "coverage" refers to the insured's damages, then that offer is impossible to make: an insurer cannot offer coverage greater than the insured's damages in some future accident at the time it offers the policy to the insured, because neither the insured nor the insurer could be aware of those damages. But if "coverage" refers to coverage within the context of a policy, with limits on liability, then the meaning of the subsection becomes clear: the insurer may offer uninsured motorist coverage and underinsurance coverage with liability limits greater than those required by ORS 806.070 or those provided for bodily injury liability. In other words, the subsection makes use of a limits-to-limits comparison to describe the permissible range of coverage that an insurer may offer. Using a limits-to-damages comparison to determine the insurer's actual liability would contradict the subsection.

ORS 742.500(1) also uses a limits-to-limits comparison to determine whether a vehicle is uninsured, which is a necessary prerequisite for the application of uninsured motorist coverage. The statute provides that uninsured motorist coverage insures for all sums that the insured is entitled to recover as damages caused by an accident with an "uninsured motor vehicle." ORS 742.504(2)(d)(A) defines an "uninsured vehicle," in part, as follows:

"(d) 'Uninsured vehicle,' except as provided in paragraph (e) of this provision, means:

"(A) A vehicle with respect to the ownership, maintenance or use of which there is no collectible automobile bodily injury liability insurance or bond, *in at least the amounts or limits prescribed for bodily injury or death under ORS 806.070* applicable at that time of the accident with respect to any person or organization legally responsible for the use of such vehicle * * *."

(Emphasis added.) Courts and insurers must determine whether a vehicle is uninsured by comparing the limits of the insurance on that vehicle to the limits prescribed by ORS 806.070 and calculating whether the former exceed the latter—in other words, by engaging in a limits-to-limits comparison, as opposed to a limits-to-damages comparison.

Using the latter type of comparison would create an internal inconsistency in the statute.

Likewise, ORS 742.504(9)(b) addresses the application of underinsured and uninsured motorist coverage as "excess" insurance by making a limits-to-limits comparison:

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured vehicle, if such insured is an insured under other insurance available to the insured which is similar to this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance or such other insurance, and the insurer shall not be liable under this coverage for a greater proportion of the damages than the applicable limit of liability of this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance."

If an insured is covered by two or more policies, that statute requires the insurer to determine its liability by comparing its own policy limit to the limits of the other policies in order to set a cap on the insured's damages, and then calculating the insurer's proportion of liability by making that same comparison. Again, that is a limits-to-limits comparison.

The statutes governing uninsured and underinsured motorist coverage use limits-to-limits comparisons to establish whether a vehicle is "uninsured," what policy limits an insurer may and must offer for uninsured motorist coverage, and what the extent of an insurer's liability is when there is more than one source of insurance. Perkins and Phillips argue that it would create an inconsistency in the statutes to hold that the question of whether a motorist is underinsured is determined by a limits-to-limits comparison. In fact, the prevalence of limits-to-limits comparisons in the statutes shows that the reverse is true. Our examination of the text and context of ORS 742.502(2)(a) makes it clear that when the Oregon legislature enacted that subsection, it intended that insurers and courts should determine whether a vehicle is underinsured by comparing its liability limits with the limits on the insured's uninsured motorist coverage.[11]

---

[11] The legislature has amended ORS 742.502(2)(a) since 2001. The third and fourth sentences of that subsection now read:

Perkins and Phillips nonetheless claim that this interpretation of ORS 742.502(2)(a) is at odds with *Bergmann* because of the results that it creates. Specifically, they argue that it is inconsistent to require an insurer to deduct "all sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle" and other recovery from the insured's damages under ORS 742.504(7)(c), but to establish whether a motorist is under-insured by comparing policy limits under ORS 742.502(2)(a). We disagree. First, the question of whether a motorist is "underinsured" is not the question that this court considered in *Bergmann*. *Bergmann* dealt with the question of how much an insured may recover from an underinsured motorist in light of benefits that the insured receives from other sources. This case deals with the threshold question of whether a motorist is underinsured at all.

Second, we already considered this supposed problem in *Bergmann*. We noted that ORS 742.502(2)(a) "essentially defines the limit of the insurer's liability in the UIM context" by providing "that UIM benefits are 'equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies.'" *Bergmann*, 337 Or at 608. ORS 742.502(2)(a) establishes that, regardless of an insured's actual damages, the insurer's liability will never exceed an amount totaling the benefits available under uninsured motorist coverage, *i.e.*, the policy limit, minus the amount that the insured recovers from other policies. In other words, UIM benefits are intended to fill the gap between the limit of an insured's UM coverage and the amount that he or she actually receives from another motorist.

---

"Uninsured motorist coverage shall include underinsurance coverage for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle with motor vehicle liability insurance that provides recovery in an amount that is less than the uninsured's motorist coverage. Underinsurance coverage shall be equal to uninsured motorist coverage less the amount recovered from other motor vehicle liability insurance policies."

Those amendments may bear on future determinations of whether a vehicle is underinsured, but the meaning of that amended text is not a question presently before this court, and therefore we do not address it at this time.

■    We hold that, under ORS 742.502(2)(a), an under-insured motorist is a motorist who is insured for an amount that is less than the policy limits of the insured's uninsured motorist coverage. In both of the present cases, Perkins and Phillips were injured by motorists with liability limits equal to the limits of their own uninsured motorist coverage. Accordingly, Perkins and Phillips were not injured by under-insured motorists and, therefore, they are not entitled to UIM benefits under ORS 742.502(2)(a).

The decisions of the Court of Appeals are affirmed.