Argued and submitted February 13, vacated and remanded for further proceedings October 30, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARK ELWYN LAWSON,
*Defendant-Appellant.*

Washington County Circuit Court
16CR68630; A165236

454 P3d 20

Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894, and driving under the influence of intoxicants, ORS 813.010, assigning error to the trial court's denial of his motion to suppress evidence obtained during a traffic stop. Defendant argues that the court incorrectly concluded that the officer had probable cause to stop him by interpreting ORS 815.235 to require that his vehicle be equipped with a windshield-mounted rearview mirror. He argues that side mirrors alone satisfy ORS 815.235's requirements. The state agrees that ORS 815.235 does not specifically require a windshield-mounted mirror but argues that there was probable cause because, in the officer's experience, side mirrors alone do not satisfy ORS 815.235's requirements. Alternatively, the state argues that there was probable cause to stop defendant for attempting to elude, ORS 811.540. *Held*: Probable cause did not exist to stop defendant for violating ORS 815.235 because, first, ORS 815.235 does not require a windshield-mounted mirror and, second, the trial court rejected the officer's testimony about his experience with side mirrors. The case must be remanded to address the state's alternate argument because the trial court must make additional factual findings in the first instance.

Vacated and remanded for further proceedings.

Beth L. Roberts, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

DeVORE, J.

Vacated and remanded for further proceedings.

**DeVORE, J.**

Defendant appeals from a judgment of conviction for possession of methamphetamine and driving under the influence of intoxicants. Defendant assigns error, among other rulings, to the trial court's denial of his motion to suppress evidence obtained during a traffic stop. Defendant argues that his vehicle's lack of a mirror mounted on his windshield did not give an officer probable cause to believe that he violated the rearview mirror requirement of ORS 815.235, when he had mirrors mounted on the sides of his vehicle.[1] Without defending the trial court's rationale, the state responds with two alternative justifications for the traffic stop that it had asserted below. The state argues that the officer had probable cause for a stop (a) because the officer testified that defendant's side mirrors were not sufficient to comply with the statute, and, in the alternative, (b) because the officer could have reasonably believed that defendant had attempted to elude him in violation of ORS 811.540.[2]

We agree with defendant that the officer lacked probable cause to stop him for a violation of the rearview mirror requirement of ORS 815.235 on the basis of concern about windshield or side mirrors. Because, however, the

---

[1] In relevant part, ORS 815.235(1) provides:

"A person commits the offense of operation without a rearview mirror if the person does any of the following:

"(a) Drives or moves on any highway any motor vehicle that is not equipped with a rearview mirror or device that meets the requirements under this section."

[2] In relevant part, ORS 811.540 provides:

"(1) A person commits the crime of fleeing or attempting to elude a police officer if:

"(a) The person is operating a motor vehicle; and

"(b) A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A) The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B) The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

trial court did not reach the factual issues on the state's last justification for the stop, we vacate and remand for the trial court to determine whether the officer had probable cause to believe that defendant attempted to elude. Because we vacate the judgment, we do not reach defendant's challenges to an award and the amount of defendant's attorney fees in that judgment. If further proceedings result in entry of a new judgment, then the court will consider defendant's ability to pay and the correct sum to be paid.[3]

We review the trial court's denial of defendant's motion to suppress for legal error, and we are bound by the court's express and implicit findings of fact, if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Early one morning, Deputy Gerba observed defendant driving an older Mitsubishi pickup truck. Gerba noticed that, although the vehicle had side mirrors, it lacked a windshield-mounted rearview mirror like most newer vehicles have. Believing that defendant's pickup violated the rearview mirror requirement, Gerba initiated a traffic stop by turning on his overhead lights. Defendant did not immediately respond to the lights. Gerba activated his car's siren. Defendant waved to Gerba and continued to drive for two to three minutes.

Gerba radioed for backup, suspecting that defendant "might be trying to elude." Gerba followed as defendant took an exit off of the highway. Defendant turned into a parking lot and drove over a curb to park his vehicle in a parking space. Gerba followed, parked, and approached defendant. He asked defendant why he had not stopped. Defendant said that his license had been suspended and

---

[3] In a supplemental brief, defendant assigns error to (1) the trial court's decision to instruct the jury that it could return a nonunanimous verdict and (2) the trial court's acceptance of a nonunanimous verdict on Count 2. We decline to address those claims of error for two reasons. First, we have concluded that we must remand to the trial court for further proceedings, and those proceedings may obviate the need to address defendant's contentions. Second, the United States Supreme Court may speak to the issue in *Ramos v. Louisiana*, No. 18-5924 (argued Oct 7, 2019), while the matter is on remand, in which case the parties may wish to develop arguments under the legal standard announced in that case.

that he did not have insurance. Backup Deputy Gilderson arrived and observed that defendant appeared to be under the influence of methamphetamine. Gilderson administered several field sobriety tests, all of which defendant failed. The deputies placed defendant under arrest and found two bags of methamphetamine on his person.

Defendant was charged with possession of methamphetamine, ORS 475.894, and driving under the influence of intoxicants, ORS 813.010. He filed a motion to suppress all evidence from the traffic stop, arguing that, given the presence of side mirrors, the absence of a windshield-mounted mirror did not give Gerba probable cause to believe that he had violated ORS 815.235. He argued that ORS 815.235 does not specifically require a windshield-mounted mirror. Defendant pointed out that another statute, ORS 815.221, specifically refers to side mirrors with the term "rearview mirror." The state rejoined that "common understanding" is that the term "rearview mirror" refers specifically to a traditional windshield-mounted mirror.[4] In addition, the state argued that, in the alternative, the circumstances would have permitted the officer to have stopped defendant for eluding the officer.

The trial court did not reach the added argument because the court agreed with the state about the need for a mirror on the windshield. The court conceded that ORS 815.235, which requires a rearview mirror, does not specify where the rearview mirror must be located. But the court allowed that "[c]ommon understanding in the vernacular [is that] the rear-view mirror is the one in the center inside the vehicle *** above the windshield or *** in the windshield." The court acknowledged that, "depending upon how you set your [side] mirrors, you can or cannot" see behind the vehicle for the statutorily required distance. That said, the court determined that Gerba had probable cause to stop defendant, whose pickup lacked a windshield-mounted mirror, for violating ORS 815.235. The court denied defendant's suppression motion. Thereafter, defendant was convicted of possession of methamphetamine and driving under the influence of intoxicants.

---

[4] The state has not pursued that argument on appeal.

On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence obtained during the traffic stop, contending that Gerba lacked probable cause to stop him for violating ORS 815.235. Defendant repeats his challenge to the trial court's focus on the need for a mirror mounted on the windshield, while the state urges alternative arguments that probable cause could be found in the inadequacy of side-mounted mirrors or in defendant's eluding the deputy.

In order to stop a person for a traffic violation lawfully, a police officer must have probable cause to believe that a person has committed a violation. ORS 810.410(3)(b); *State v. Matthews*, 320 Or 398, 402, 884 P2d 1224 (1994). To have probable cause, an officer must subjectively believe that a violation has occurred, and that belief must be objectively reasonable under the circumstances. *State v. Stookey*, 255 Or App 489, 491, 297 P3d 548 (2013). In order for an officer's belief to be considered objectively reasonable, the facts, as the officer perceives them, must actually constitute a violation of the law. *State v. Tiffin*, 202 Or App 199, 203, 121 P3d 9 (2005).

Defendant concedes that Gerba subjectively believed that defendant violated the statute by not having a mirror mounted on the windshield, but he contends that Gerba's belief was not objectively reasonable. Defendant argues that the statute does not specifically require a windshield-mounted mirror. And, he contends that his truck's side view mirrors were sufficient to satisfy the statute's requirements.

To resolve this dispute, we must determine whether side mirrors qualify as rearview mirrors under ORS 815.235. As *its* rationale, the trial court interpreted the term "rearview mirror" to reflect colloquial understanding—that a rearview mirror is a windshield-mounted mirror above the dashboard—and, further, that only a windshield-mounted mirror could serve as the requisite rearview mirror. Our issue is whether ORS 815.235 supports that construction.

In construing statutory text, Oregon courts adhere to the methodology outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), *as modified in*

*State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE*, 317 Or at 610. In the absence of a statutory definition or terms of art, we give the disputed portion its "'plain, natural, and ordinary' meaning." *Dowell v. Oregon Mutual Ins. Co.*, 361 Or 62, 69, 388 P3d 1050 (2017) (quoting *PGE*, 317 Or at 611). To help us determine what a phrase's ordinary meaning is, we consult a dictionary on the assumption that, if the legislature did not otherwise specially define a term in the statute, the dictionary definition would reflect the meaning of the term that the legislature intended. *DCBS v. Muliro*, 359 Or 736, 746, 380 P3d 270 (2016). In addition to the text of a disputed term, the court will also "consider[] the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes." *PGE*, 317 Or at 611.

We consider first the immediate text at issue and then related statutes. As noted above, the rearview mirror statute, ORS 815.235, provides, in part:

"(1)  A person commits the offense of operation without a rearview mirror if the person does any of the following:

"(a)  Drives or moves on any highway any motor vehicle that is not equipped with a rearview mirror or device that meets the requirements under this section."

The functional requirements for a rearview mirror are described in subsection (2), which specifies:

"A rearview mirror or device only meets the requirements of this section if it enables the driver of the vehicle to have such a clear and unobstructed view of the rear at all times and under all conditions of load as will enable the driver to see any other vehicle approaching from not less than 200 feet in the rear on an unobstructed road."

ORS 815.235(2). Other than those requirements, Oregon statute does not define the term "rearview mirror," nor dictate where it must be mounted.

Although it may be common to think of a rearview mirror as distinct from side mirrors, as did the trial court, the term "rearview mirror" could be broad enough to

include both windshield- and side-mounted mirrors. A dictionary defines the term "rearview mirror" to be "a mirror (as in an automobile) designed to give a view of the area behind a vehicle." *Webster's Third New Int'l Dictionary* 1891 (unabridged ed 2002). Like ORS 815.235(2), the dictionary definition implies no particular place at which to locate a mirror or mirrors, whether on a windshield or the sides of a vehicle. Taken together, ORS 815.235 and common usage as reflected in the dictionary relate to the function of mirrors as permitting an unobstructed view to the rear of not less than 200 feet.

Within the immediate text of ORS 815.235(2), we note a textual clue to a meaning of "rearview mirror" that means more than simply a windshield-mounted mirror. That is, subsection (2) refers to a rearview mirror or device that provides a "clear and *unobstructed* view of the rear at all times and under all *conditions of load* as will enable the driver to see *** not less than 200 feet in the rear." (Emphases added.) The references to an "unobstructed view" and "all conditions of load" contemplate obstructions such as a pickup camper or a trailer of full height that obstruct the view of a windshield-mounted mirror. Under such conditions, side-mounted mirrors necessarily become the means by which to achieve an unobstructed view to the rear. Implicitly, side mirrors would come within the meaning of "rearview mirror."

Another clue to the broader meaning of "rearview mirror" is found elsewhere in the Oregon Vehicle Code. At ORS 815.221, the statute refers to "rearview mirrors *on each side* of the vehicle" when describing tinting restrictions on windows.[5] (Emphasis added.) In an explicit way, that reference acknowledges the potential that a "rearview mirror" *could* be located on the side of the vehicle. We do not view that reference as an anomaly. In construing statutes that

_____

[5]  At ORS 815.221(2), the statute sets tinting restrictions, then ORS 815.221(4) provides, in part:

"Tinting material that has a lower light transmittance or produces a lower total light transmittance than permitted in subsection (2)(a) and (c) of this section may be applied to all windows of a multipurpose passenger vehicle that are behind the driver. This subsection applies only to vehicles that are equipped with rearview mirrors on each side of the vehicle."

are related as part of a scheme, we assume that a given term has the same meaning across statutes unless statutory text and context demonstrate otherwise. *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 211, 179 P3d 633, *modified on recons*, 345 Or 373, 195 P3d 59 (2008).

Given those clues and finding no other limitation, we conclude that the term "rearview mirror" refers to any mirror that a driver can use to view without obstruction to the rear of the vehicle no less than 200 feet. That description includes side-mounted mirrors. The rearview-mirror requirement is not restricted to a windshield-mounted mirror over the dashboard. As a consequence, the statute did not afford the trial court a legal basis upon which to conclude that the deputy's belief was objectively reasonable so as to provide probable cause for a violation of ORS 815.235.

The state argues on appeal that Gerba provided testimony that, in his experience, side mirrors alone are not sufficient to give the driver the required, unobstructed view behind the vehicle. Therefore, the state contends, the officer had probable cause for the stop, even if a windshield mirror was not required.

Because the state offers alternative grounds on which we might affirm the decision of the trial court, we analyze them under the "right for the wrong reason" doctrine of *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 20 P3d 180 (2001). Under this doctrine, even if the trial court's reasoning for making the challenged ruling was erroneous, a reviewing court can nonetheless affirm on other grounds under certain conditions. *Id.* at 659. First, "if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance." *Id.* This requires

> "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Id.* at 659-60. Second, "the decision of the lower court must be correct for a reason other than that upon which the lower court relied." *Id.* at 660. Finally, third, "the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance." *Id.* The requirement that the trial court's ruling be consistent with the view of the evidence supporting the alternative basis for affirmance proves fatal to the state's argument here.

We find the state's side mirror argument unpersuasive because it is inconsistent with the trial court's factual findings. The court did not credit that portion of Gerba's testimony that doubted the view provided by side mirrors. The court remarked that "*[t]here was no way for the officer to tell whether the side view mirrors are appropriately placed so [defendant] could see 200 feet behind him.* \*\*\* [D]epending on how you set your mirrors, you can or cannot see 200 feet behind you. It just depends on how they're set." (Emphasis added.) Those remarks show that the trial court necessarily rejected Gerba's testimony that side view mirrors are categorically inadequate for providing the required rear view. Not unlike a mirror on a windshield, the efficacy of side mirrors depends on how they are set; and there was "no way for the officer" to know their setting. For this court to accept the state's alternative argument about side mirrors would require us to ignore the trial court's finding. Because the state's argument on mirrors is inconsistent with the trial court's findings, it cannot serve to carry the state's burden to show probable cause to justify the stop of defendant's vehicle. *See Outdoor Media Dimensions Inc.*, 331 Or at 659-60.

As its last alternative, the state argues that we should affirm because there was probable cause to stop defendant for violating the statute prohibiting attempts to elude police officers, ORS 811.540. The state contends that, because defendant failed to yield to Gerba's use of his overhead lights and siren for two to three minutes, Gerba had probable cause to believe that defendant was attempting to elude him. As we explain, we cannot conclude that the record is sufficient here when the trial court has not resolved certain factual uncertainties. *See State v. Lovaina-Burmudez*,

257 Or App 1, 14, 303 P3d 988, *rev den*, 354 Or 148 (2013) (stating that, "with respect to alternative grounds for affirmance raised before, but not resolved by, the trial court[,] we will ordinarily remand to the trial court to determine potentially dispositive questions of fact in the first instance"). In order for us to sustain the trial court on an alternative basis, the trial court would need to have made findings regarding whether Gerba subjectively believed that defendant was attempting to elude him and whether that belief was objectively reasonable. "[W]hether a police officer subjectively believes that probable cause for an arrest exists is a question of fact." *State v. Miller*, 211 Or App 667, 670, 156 P3d 125 (2007), *rev'd on other grounds*, 345 Or 176, 191 P3d 651 (2008). In this case, there are several factual uncertainties.

After Gerba activated his overhead lights and siren, defendant waved back toward Gerba. It is unclear what factual inference should be drawn from this wave. The trial court could find that, in waving to Gerba, defendant signaled to acknowledge the traffic stop and to indicate, with a wave and without accelerating, that he intended to pull over at the next exit. Or, the trial court could find that defendant was waving goodbye to Gerba and making an effort to escape by continuing for minutes without stopping. Whatever the message, defendant's wave bears on both the subjective and objective aspects of probable cause.

For his part, Gerba gave ambiguous and inconsistent statements about whether defendant was eluding. Gerba indicated that he radioed for additional units because he believed that the defendant was "possibly" trying to elude him. During cross-examination, Gerba testified that, in his experience, when someone like defendant fails to yield, sometimes "it turns out they're really not eluding." For that reason, Gerba testified, when defendant failed to yield to him but did not change his speed, he decided that he wanted to wait "a little bit more to see what was going to happen."

During redirect examination, Gerba seemed unsure about whether he believed defendant had attempted to elude him. In response to a question from the prosecutor asking whether Gerba thought defendant intentionally did not want to stop because his license was suspended, Gerba responded,

"[y]eah. I could see that, especially when doing the waving thing." Later during recross-examination, Gerba further testified that he thought that defendant might be failing to yield because, often, "when people are suspended and \*\*\* [have] no insurance, they'll pull into a parking lot so that they don't get their vehicle stolen. So that's probably why I didn't go with the elude part."

In redirect examination, however, Gerba also spoke as if he firmly believed that defendant was attempting to elude him. When asked whether he had probable cause to arrest the defendant for attempting to elude, Gerba testified that, "[y]eah, I could have if I wanted to."

It is crucial for the trial court to resolve such factual issues in the first instance before a reviewing court can pass on the legal questions. *See State v. Madden*, 363 Or 703, 725-26, 427 P3d 157 (2018) (holding that the trial court should make a factual determination in the first instance about whether officer had a reasonable suspicion to detain the defendant); *State v. Washington*, 284 Or App 454, 469, 392 P3d 348 (2017) (concluding that affirming on the state's alternative basis was inappropriate when the trial court had not yet resolved the factual issues necessary to determine whether officers had stopped the defendant within the meaning of Article I, section 9, of the Oregon Constitution).

Accordingly, we vacate and remand to the trial court with instructions to make a finding about whether Gerba had probable cause to believe that defendant attempted to elude him in violation of ORS 811.540. If the trial court finds that Gerba had probable cause to believe defendant was attempting to elude, the court may reinstate the judgment of conviction. If the trial court finds that Gerba lacked probable cause to believe that defendant was attempting to elude him, the court should grant defendant's motion to suppress and conduct further appropriate proceedings.

Vacated and remanded for further proceedings.