Argued and submitted March 7, peremptory writ to issue with instructions
December 21, 1995

STATE ex rel Deangelo Leroy TURNER,
*Plaintiff-Relator,*

*v.*

Honorable Kimberly C. FRANKEL,
Judge of the Circuit Court of the
State of Oregon for Multnomah County,
*Defendant.*

(SC S41709)

908 P2d 293

Robert A. Goffredi, Portland, and Leland R. Berger, Portland, argued the cause and filed the briefs for plaintiff-relator.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for defendant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

CARSON, C. J.

**CARSON, C. J.**

This is an original mandamus proceeding. Relator, Deangelo Leroy Turner, seeks a writ directing defendant judge to deny the state's motion for declaration of a mistrial on two counts of aggravated murder in a criminal prosecution of Relator. Relator further asks this court to direct defendant judge to dismiss, with prejudice, those two counts of aggravated murder.

In September of 1993, Relator was indicted jointly with Ronald Ray Simmons, Jr., on six counts of aggravated murder and three counts of other felonies. The six aggravated murder counts, all related to the death of a single victim, were: 1) intentional murder committed in the course and furtherance of rape in the first degree; 2) intentional murder committed in the course and furtherance of sodomy in the first degree; 3) intentional murder committed in the course and furtherance of sexual abuse in the first degree; 4) intentional murder committed in an effort to conceal the commission and identity of the perpetrator of rape in the first degree; 5) intentional murder committed in an effort to conceal the commission and identity of the perpetrator of sodomy in the first degree; and 6) intentional murder committed in an effort to conceal the commission and identity of the perpetrator of sexual abuse in the first degree.[1]

---

[1] ORS 163.095 provides, in part:

" '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b).

"(e) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

ORS 163.115(1) provides, in part:

"[C]riminal homicide constitutes murder:

"* * * * *

"(b) When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(H) Any felony sexual offense in the first degree defined in this chapter[.]"

In the same indictment, Relator and Simmons also were charged with rape in the first degree (count seven),[2] sodomy in the first degree (count eight),[3] and sexual abuse in the first degree (count nine).[4]

Relator and Simmons were tried jointly before a jury. After the close of evidence, defendant judge instructed the jury. She gave instructions on counts four, five, and six that identified intentional murder as a lesser-included offense of aggravated murder committed to conceal the commission and identity of the perpetrator of a felony. Defendant judge also gave instructions on counts one, two, and three that identified felony murder as a lesser-included offense of aggravated murder in the course and furtherance of a felony.[5] In addition, defendant judge gave the following instruction on lesser-included offenses:

> "Now, there are certain rules for considering lesser and included offenses, and this is how it must be handled: When you deliberate, you should first consider the charged offense, and if you find a defendant not guilty on the charged offense, or if you cannot agree on a verdict on the charged offense, you should then consider the lesser and included offenses."

On August 2, 1994, after six days of deliberation, the jury notified defendant judge that it had reached verdicts in both cases. The presiding juror returned the verdict forms to defendant judge. Next to each count, beside the spaces for marking "not guilty" or "guilty," the jury had written numbers

---

[2] ORS 163.375(1)(a) provides: "A person who has sexual intercourse with another person commits the crime of rape in the first degree if * * * [t]he victim is subjected to forcible compulsion by the person."

[3] ORS 163.405(1)(a) provides: "A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if * * * [t]he victim is subjected to forcible compulsion by the actor."

[4] ORS 163.427(1)(a)(B) provides: "A person commits the crime of sexual abuse in the first degree when that person * * * [s]ubjects another person to sexual contact and [t]he victim is subjected to forcible compulsion by the actor."

[5] On the morning after the jury instructions were given, before the jury began deliberating, Relator moved the court to instruct the jury that intentional murder is also a lesser-included offense of aggravated murder in the course and furtherance of a felony. He argued that he inadvertently had forgotten to request that instruction on those three counts. Defendant judge denied the motion. That ruling is not before us.

or blank marks in parentheses.[6] On counts one and three, the jury checked neither "not guilty" nor "guilty" for either the charged offense of aggravated murder or the lesser-included offense of felony murder.[7] On counts four and six, the jury again checked neither "not guilty" nor "guilty" for the charged offense of aggravated murder.[8] However, the jury found Relator guilty of the lesser-included offense of intentional murder on those two counts.

After the jury returned its verdict, defendant judge stated that "in some sense the form is not complete. And I may have to have [the jury] complete [its] form." After some discussion with counsel, during which all parties asked defendant judge to poll the jury as to some of the counts, defendant judge sent a note to the jury asking the jurors to "list the name of the jurors who agreed and disagreed with your verdicts."[9] At some later time, defendant judge received the verdicts and dismissed the jury.[10]

On August 12, 1994, the state moved for declaration of a mistrial as to counts one, three, four, and six, the counts for which the jury reached neither a not-guilty nor a guilty verdict on the charged offense of aggravated murder. The state also moved to set those four counts for retrial and to delay sentencing on the other convictions until after the

---

[6] Although it is not entirely clear from the record what the notations written on the verdict forms represented, it appears that the numbers may have indicated the vote of the jury, "not guilty" to "guilty," at the time that it returned the verdicts. For example, the written notation "(2-10)" indicated that two jurors voted "not guilty" and 10 jurors voted "guilty" for that particular count. The blank marks, or "(___)," appear to indicate that, because the jury reached a guilty verdict on the intentional murder charge at issue, it did not consider the lesser-included offense of manslaughter in the first degree.

The crime of murder requires a unanimous verdict; other crimes require a concurrence of at least 10 of 12 jurors. ORS 136.450.

[7] For both counts one and three, the jury wrote "(2-10)" beside the aggravated murder charge on the verdict form and "(1-11)" beside the lesser-included offense of felony murder.

[8] For both counts four and six, the jury wrote "(2-10)" beside the aggravated murder charge on the verdict form.

[9] The parties agreed to this choice by the trial judge. *But see* ORCP 59 G(3), made applicable to trials in criminal actions by ORS 136.330 (providing specific method for polling juries).

[10] There is no information in the record that specifies exactly when defendant judge received the verdicts and dismissed the jury. It is unclear whether she did so on August 2, 1994, or at a later date. It does appear that she did so before the August 29, 1994, hearing on the state's motion to declare a mistrial.

retrial on those four counts. Relator objected to the state's motions.

At the August 29, 1994, hearing on the state's motions, defendant judge said that "in Counts 1 and 3, the jury returned no acceptable verdicts on either the greater or the lesser offense." Two days later, defendant judge entered an order granting the state's motion to declare a mistrial as to counts one and three and setting those matters for retrial. As to the other counts, defendant judge denied the state's motion to declare a mistrial and to set for retrial.

After entry of that order, Relator moved to dismiss counts one and three on the ground that retrial on those counts would violate his right against former jeopardy under Oregon statutory law and the Oregon Constitution and his right against double jeopardy under the United States Constitution. On September 9, 1994, at the time originally scheduled for sentencing, Relator presented his argument to the court supporting his motion to dismiss counts one and three. At the conclusion of Relator's argument, defendant judge stated:

> "I am going to stand on my ruling that addresses the question of the retrial on Counts 1 and 3. I believe that those do constitute failures to reach verdicts. I do not believe they violate double jeopardy in a legal sense, though I understand what [Relator's] feelings about that are, and I will deny the motion additionally to dismiss on the grounds of double jeopardy as to Counts 1 and 3."

Defendant judge denied Relator's motion to dismiss counts one and three.

On November 29, 1994, this court issued an alternative writ of mandamus, directing defendant judge to deny the state's motion for mistrial as to counts one and three and directing defendant judge to dismiss those two counts, with prejudice, or to show cause for failure to do so. Defendant judge elected to show cause for her failure to comply with the directions of the alternative writ, contending before this court that her original rulings were correct.[11]

---

[11] In these proceedings, defendant judge is represented by the Oregon Attorney General pursuant to ORS 34.130(4), which provides, in part, that "[w]ith the consent of [defendant judge] * * * the attorney for an adverse party may appear on behalf of [defendant judge]." The state is an adverse party in these proceedings for the purposes of ORS 34.130(4). ORS 34.105(1) (" 'Adverse party' means a

For the reasons that follow, we conclude that the state is barred by the statutory prohibition in ORS 131.515(1) against former jeopardy from retrying Relator on counts one and three of the original indictment. We therefore direct that a peremptory writ of mandamus shall issue directing defendant judge to vacate her order that declared a mistrial and ordered a retrial, and further directing defendant judge to deny the state's motion for a mistrial and to dismiss, with prejudice, those two counts of aggravated murder.

Relator argues that his right to be free from former jeopardy under ORS 131.515(1) and Article I, section 12, of the Oregon Constitution, and his right to be free from double jeopardy under the Fifth Amendment to the United States Constitution, prevent the state from retrying him on counts one and three. As always, before reaching Relator's constitutional arguments, we first consider his statutory argument. *See State v. Stevens*, 319 Or 573, 579, 879 P2d 162 (1994) (applying that methodology).

ORS 131.515(1) provides: "Except as provided in ORS 131.525 and 131.535 * * * [n]o person shall be prosecuted twice for the same offense."[12] That statutory provision prohibits the state from reprosecuting Relator for aggravated murder on counts one and three unless one of the statutory exceptions to ORS 131.515(1) applies. Defendant judge argues that this case falls within the statutory exception contained in ORS 131.525(1)(b)(D), which allows the state to reprosecute a criminal defendant when the original trial ends in a deadlocked jury. ORS 131.525(1)(b)(D) provides:

"A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(b) The trial court finds that a termination, other than by judgment of acquittal, is necessary because:

"* * * * *

---

beneficially interested party to a judicial * * * proceeding from which a mandamus proceeding arises, whose interests are adverse to the relator").

[12] As to counts one and three, Relator has been "prosecuted" for the purposes of the statute by virtue of the filing of the indictment and the impaneling and swearing in of the jury. ORS 131.505(5)(b).

"(D) The jury is unable to agree upon a verdict[.]"

Defendant judge argues that, in this case, the jury was "unable to agree upon a verdict" on counts one and three of aggravated murder and, thus, that ORS 131.515(1) does not bar the state from reprosecuting Relator on those two counts. For the reasons that follow, we disagree.

■ ORS 131.525(1)(b)(D) requires that a trial judge find that termination of a trial is necessary because the jury is unable to agree upon a verdict. Traditionally, this court does not disturb such a finding by a trial judge. *See State v. Paquin*, 229 Or 555, 558, 368 P2d 85 (1962) ("A finding by a trial judge that a jury is unable to agree is * * * absolute and conclusive." (internal citation and quotation marks omitted)).[13] However, the record here contains a number of discrepancies in this regard and consequently does not demonstrate that defendant judge actually made such a finding in this case. A summary of the record follows.

At the time the jury returned its verdict forms, defendant judge stated to the jury foreman: "And I understand *you have reached verdicts* in these cases?" (Emphasis added.) The foreman responded, "Yes." After reviewing the forms, defendant judge sent the jury out of the courtroom and stated to counsel that "in some sense the form is not complete." She also noted to Relator's counsel that, as to count one, "that is effectively that *not guilty verdict*, but they have not recorded a check mark." (Emphasis added.) The district attorney then stated that "it appears that they're hung as to some of the counts." When defendant judge began to respond, the district attorney stated, "That's not clear to me." Defendant judge then responded, "That's why I said it *may not be a complete verdict*." (Emphasis added.)

Defendant judge and counsel then discussed whether, and if so, how, the jury should be polled. During the course of that conversation, defendant judge stated that "I think it's clear from the parentheses that they have in fact gotten *either* the requisite number to make a not guilty finding *or* have been unable to reach a verdict." (Emphasis added.)

---

[13] *Paquin* was decided before ORS 131.525(1)(b)(D) was enacted. However, that case concerned a plea of former jeopardy "based upon the fact that the defendant had been previously tried upon the same indictment and the jury had failed to reach a verdict." 229 Or at 557. That exception to former jeopardy was later codified as ORS 131.525(1)(b)(D).

Defendant judge also noted that the jury was "unable to reach [a] verdict[]" as to the charged offense on count six, although it did reach a guilty verdict on the lesser-included offense. Also during that discussion, defendant judge suggested that she have the jury list the breakdown of which jurors voted guilty and not guilty, "other than where they have been unable to reach a verdict."[14] The parties agreed that defendant judge would send a note to the jury, asking the jury members to list the names of who "agreed and disagreed with [the] verdicts." Defendant judge noted that she was not requesting that the jury members list their names for counts that did not "result[] in any sort of finding."[15]

After the jury returned the verdict forms and the parties agreed upon the polling method, defendant judge stated that "these verdicts are receivable by the court, subject to subsequent motion." The record does not indicate whether, at that time, defendant judge *found* that the jury was *unable* to agree upon a verdict.

At the subsequent hearing on the state's motion for a mistrial, defendant judge stated that, "in Counts 1 and 3, the jury returned *no acceptable verdicts* on either the greater or the lesser offense." (Emphasis added.) Again, the record does not reflect a finding that the jury was *unable* to agree upon a verdict.

Finally, at the September 9 hearing, defendant judge stated that "I am going to stand on my ruling that addresses the question of the retrial of Counts 1 and 3. I believe that those do constitute *failures to reach verdicts*." (Emphasis added.) She made that statement after having terminated the prior prosecution by discharging the jury and granting the motion for declaration of a mistrial on counts one and three.

As can be seen, the record in this case does not demonstrate that defendant judge *found* that the jury was *unable* to agree upon a verdict on counts one and three. It is clear that defendant judge acknowledged that the jury *did not*

---

[14] It is not clear to which counts defendant judge was referring when she made this statement.

[15] The record does not indicate which counts defendant judge included in the note to the jury, although it appears from her comments that the note included all counts, with the exception of those beside which the jury had written a blank mark in the margin.

agree upon a verdict on counts one and three. However, the record contains no indication of an affirmative finding that "a termination, other than by judgment of acquittal, is necessary because * * * [t]he jury is *unable* to agree upon a verdict" as required by ORS 131.525(1)(b)(D). (Emphasis added.)

This court previously has stated that, "[w]hen a jury is discharged for its inability to agree, trial courts, in entering the order, should be careful that the jeopardy which is attached is affirmatively shown to have been nullified." *State v. Chandler et al*, 128 Or 204, 207, 274 P 303 (1929). In *Chandler*, this court noted the most appropriate means for trial courts to do so:

> "[W]e believe the better view to be that when the jury, after having deliberated upon their verdict such a length of time as the trial court may deem reasonable, shall make known in open court, in the presence of the defendant, their inability to agree and the court, having in view all of the circumstances surrounding the case, and being satisfied with such report, causes a finding to that effect to be entered in the journal, and thereupon discharges the jury, the apparent jeopardy, which the record shows attached when the jury [was] impaneled, is annulled * * *."

*Id.* at 206-07 (quoting *State v. Reinhart*, 26 Or 466, 474, 38 P 822 (1895) (original emphasis omitted)); *see also Paquin*, 229 Or at 557-58 (this court did not disturb trial court's finding when "[t]he jury informed the court that it was hopelessly divided, and that it was impossible for said jury to agree upon a verdict, and the court, being fully satisfied that said jury was hopelessly divided, and that said jury would continue to be unable to agree upon a verdict, and that there was no probability whatever that a verdict could be reached by said jury"). Although those cases were decided before the legislature enacted the statutory exception to ORS 131.515(1) at issue in this case, they demonstrate that this court previously had established a guideline for trial courts to follow when faced with the possibility that a jury is unable to agree upon a verdict.

The exceptions to former jeopardy are now part of a statute, ORS 131.525, which sets forth specific requirements that must be met in order for those exceptions to apply.[16]

---

[16] ORS 131.525 was part of the Proposed Oregon Criminal Procedure Code drafted by the Criminal Law Revision Commission, which was created in 1967. The legislature enacted ORS 131.525 in 1973. Or Laws 1973, ch 836, § 28.

According to ORS 131.525(1)(b)(D), before jeopardy is nullified, the trial court must *"find[]* that a termination * * * is necessary" due to the jury's inability to agree upon a verdict. (Emphasis added.) A finding by defendant judge that the jury *did not* agree upon a verdict as to counts one and three is not the equivalent of a finding that the jury was *unable* to agree upon a verdict as to those counts. Because it simply is not clear from the record whether defendant judge made such a finding in this case, the statutory exception to former jeopardy contained in ORS 131.525(1)(b)(D) does not apply, and the prosecution is barred from retrying Relator on counts one and three.

■     A provision of the Oregon Rules of Civil Procedure supports our conclusion that ORS 131.525(1)(b)(D) does not apply in this case. ORCP 59 F(1)(a) instructs trial courts on the procedure for discharging a jury that is unable to agree upon a verdict.[17] It provides:

> "The jury shall not be discharged after the cause is submitted to them *until they have agreed upon a verdict* and given it in open court *unless*:

> "F(1)(a)   At the expiration of such period as the court deems proper, it *satisfactorily appears that there is no probability of an agreement*[.]" (Emphasis added.)

In this case, the record clearly indicates that the jury failed to agree upon a verdict as to counts one and three. However, nothing in the record indicates that, at the time defendant judge dismissed the jury, it "satisfactorily appear[ed] that there [was] *no probability* of an agreement" as to those counts. (Emphasis added.) Consequently, we cannot conclude that ORCP 59 F(1)(a) was followed in this case.

■     Because the requirements of ORCP 59 F(1)(a) were not met, we must determine the effect that noncompliance with that provision has upon this case. The central question is whether compliance with ORCP 59 F(1)(a) is a prerequisite to the applicability of the statutory exception to former jeopardy contained in ORS 131.525(1)(b)(D). Our task is one of finding legislative intent. That is, we must determine whether, in enacting ORS 131.525(1)(b)(D), the legislature intended that the requirements of ORCP 59 F(1)(a) be met in order for a trial judge to find that a jury is "unable to agree upon a

---

[17] ORS 136.330(1) provides that ORCP 59 F applies in criminal cases.

verdict" for the purposes of ORS 131.525(1)(b)(D). We begin by looking to the text and context of the provisions at issue. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (describing methodology). Context includes other related statutes. *Id.* at 611.

The first clause of ORCP 59 F states the general rule of that provision: a jury shall not be discharged until the jurors have "agreed upon a verdict." Here, ORCP 59 F uses essentially the same language, "agree upon a verdict," as does the exception to former jeopardy contained in ORS 131.525(1)(b)(D). Paragraph (1)(a) of ORCP 59 F permits discharge of the jury if there is *no probability* of an agreement, not merely if the jury fails to agree. Similarly, ORS 131.525(1)(b)(D) provides that termination of a proceeding will nullify the attached jeopardy if the jury members are *unable* to agree upon a verdict, not merely if they fail to agree. Clearly, the text of both provisions focuses on a jury's *ability* to come to an agreement, as opposed to whether or not the jury members *in fact* agree upon a verdict.

A look at the context of ORCP 59 F is also helpful to our analysis. A related statute, ORS 136.330(1), provides that "ORCP * * * 59 * * * F * * * *appl[ies] to and regulate[s]* the conduct of the trial of criminal actions." (Emphasis added.) One purpose of that statute obviously is to make certain rules of civil procedure applicable to criminal trials. However, according to ORS 136.330(1), ORCP 59 F also *regulates* criminal trials. In other words, the procedure for discharging a jury set forth in ORCP 59 F(1)(a) is the standard by which the jury's ability to agree upon a verdict must be assessed. Again, the jury's *ability* to agree upon a verdict is logically connected to the determination of whether a jury is *unable* to agree upon a verdict for the purposes of ORS 131.525(1)(b)(D).

■ Although our analysis of both the text and context of ORCP 59 F(1)(a) and ORS 131.525(1)(b)(D) supports the conclusion that those provisions are procedurally connected, the legislature's intent in this respect is not entirely clear. Therefore, we turn to the available legislative history to assist in our determination of legislative intent. *See PGE*, 317 Or at 611-12 (describing methodology). Legislative history includes the commentary to the Oregon Criminal Procedure Code. *See State v. Ford*, 310 Or 623, 636-37, 801 P2d 754 (1990) (citing the commentary as part of the legislative history to ORS

133.235, the statutory knock-and-announce rule); *State v. Dyson*, 292 Or 26, 32-34, 636 P2d 961 (1981) (citing the commentary as part of the legislative history to ORS 135.865, pertaining to sanctions for failure to comply with statutory discovery provisions in criminal prosecutions).

What is now ORS 131.525(1)(b) was originally part of the Oregon Criminal Procedure Code enacted by the 1973 legislature. Or Laws 1973, ch 836, § 28. The drafters of that statutory exception to former jeopardy noted that the provision "in part follows the provision[] in ORS 17.330 * * * [, which] allows for discharge of the jury after a failure to agree after an expiration of a proper period of time." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report (November 1972), § 28, at 22. Then-ORS 17.330 provided, in part, that "the jury shall not be discharged after the cause is submitted to them until they have agreed upon a verdict * * *, unless * * * at the expiration of such period as the court deems proper, it satisfactorily appears that there is no probability of an agreement." ORS 17.330 (1971).

ORS 17.330 was repealed by the 1979 legislature when it enacted the new Oregon Rules of Civil Procedure. Or Laws 1979, ch 284, § 199. At that time, ORS 17.330 was replaced by ORCP 59 F(1)(a), which the legislature has not amended since its enactment. In view of the fact that the drafters of ORS 131.525(1)(b)(D) specifically acknowledged that the wording of that provision followed then-ORS 17.330, now ORCP 59 F(1)(a), it appears that the drafters intended that the two provisions should be read together. Nothing else in the legislative history of ORS 131.525(1)(b)(D) contradicts that suggestion.

In the light of the text and context of ORCP 59 F and ORS 131.525(1)(b)(D), as well as the legislative history of ORS 131.525(1)(b)(D), we conclude that compliance with the procedural rule set forth in ORCP 59 F(1)(a) is a prerequisite to the triggering of the exception to former jeopardy contained in ORS 131.525(1)(b)(D). In other words, only when it satisfactorily appears that there is no probability of an agreement, under ORCP 59 F(1)(a), does a trial judge have a basis to find that the jury is unable to agree upon a verdict for the purposes

of ORS 131.525(1)(b)(D).[18] Therefore, the fact that the requirements of ORCP 59 F(1)(a) were not met in this case further supports our conclusion that the exception to former jeopardy contained in ORS 131.525(1)(b)(D) does not apply. Defendant judge does not argue that any of the other statutory exceptions to ORS 131.515(1) apply in this case. Thus, ORS 131.515(1) bars the state from reprosecuting Relator on counts one and three of the indictment.[19]

■    One final point deserves mention. ORS 34.110 provides that a writ of mandamus "shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." Mandamus is an appropriate remedy in this case, because Relator's ordinary right to appeal after conviction does not vindicate his statutory right to be free from a second prosecution for the same offense.

It is ordered that a peremptory writ shall issue directing defendant judge to vacate the order declaring a mistrial and ordering a retrial on counts one and three of aggravated murder. The peremptory writ shall further direct defendant judge to deny the state's motion for declaration of a mistrial, and to dismiss those two counts of aggravated murder, with prejudice.

---

[18] This reading of ORCP 59 F(1)(a) and ORS 131.525(1)(b)(D) makes sense from a procedural standpoint. When a jury cannot agree upon a verdict, the inquiry is whether it satisfactorily appears that there is no probability of an agreement. If that is the case, the trial judge then can dismiss the jury under ORCP 59 F(1)(a). That act of discharging the jury constitutes termination of the proceeding based upon the trial judge's finding that the jury was unable to agree upon a verdict, for the purposes of ORS 131.525(1)(b)(D).

[19] The disposition that we make of this case makes it unnecessary to decide the second issue that is raised by the trial judge's actions in this case, viz., whether a guilty verdict for the lesser-included offense of intentional murder under a count of aggravated murder acts as an acquittal for a second count of aggravated murder, when there was only one victim and the jury was unable to agree upon a verdict as to the second count of aggravated murder. We leave that issue for another day.