Argued and submitted June 11, decision of Court of Appeals and judgment of
circuit court affirmed July 16, 2009

Jessica VOGELIN,
*Petitioner on Review,*

*v.*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
*Respondent on Review.*

(CC0502-01571; CA A132051; SC S056655)

213 P3d 1216

Kathryn H. Clarke, Portland, argued the cause for petitioner on review. With her on the brief was Steven A. Kahn.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause for respondent on review. With him on the brief was Brian J. Scott.

Meagan A. Flynn, Portland, filed the brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Joel S. DeVore, Luvaas Cobb, Eugene, filed a brief on behalf of *amici curiae* Allstate Ins. Co., State Farm Mutual Auto Ins. Co., and The Property Casualty Insurers Association of America.

WALTERS, J.

## WALTERS, J.

In this insurance breach-of-contract case, we decide how a liability payment that plaintiff recovered from a tortfeasor affects her recovery of underinsured motorist (UIM) benefits under her own insurance policy. We conclude that the relevant Oregon statutes permitted defendant—plaintiff's insurer—to calculate plaintiff's UIM benefit by subtracting the tortfeasor's liability payment from the uninsured motorist (UM) liability limit of plaintiff's policy, instead of by subtracting that payment from the amount of plaintiff's total damages.

The facts are undisputed. Plaintiff, who had purchased an automobile insurance policy from defendant, was injured in an automobile collision in 2003 and sustained damages exceeding $300,000. The driver who collided with plaintiff and injured her had liability insurance with a liability limit of $25,000; the driver's insurance carrier paid that amount to plaintiff. Because the driver's liability payment was not sufficient to pay the full amount of plaintiff's damages, plaintiff made a claim against defendant for UIM benefits; the UM liability limit under her own policy was $100,000. The parties discussed various settlement amounts but did not come to an agreement.

Plaintiff filed this action against defendant in 2005 for breach of contract, arguing that ORS 742.504 establishes the minimum policy terms for UM and UIM insurance coverage. Plaintiff contended that, as interpreted by this court in *Bergmann v. Hutton*, 337 Or 596, 101 P3d 353 (2004), ORS 742.504(7)(c) requires insurers to pay their insureds the total amount of the damages that they incur, less any amount paid by or on behalf of a tortfeasor, up to the insured's UM liability limit. Plaintiff argued that ORS 742.502(2)(a), which mandates UIM coverage, must be read consistently with ORS 742.504(7)(c), and compels the same result. Thus, plaintiff asserted, although the policy that she had purchased from defendant purportedly provided that the tortfeasor's $25,000 liability payment would be deducted from her UM liability limit ($100,000), Oregon law required that that payment should be deducted from the total amount of her damages (which exceeded $300,000). Because the resulting figure

exceeded her policy's $100,000 UM liability limit, plaintiff reasoned that she was entitled to receive her full UIM benefit from defendant. Defendant responded that ORS 742.502(2)(a), rather than ORS 742.504(7)(c), controlled, and that, under defendant's interpretation of that former statute, the tortfeasor's payment ($25,000) must be deducted from the amount of the policy's UM limit in plaintiff's policy ($100,000), rather than from plaintiff's damages. It followed, in defendant's view, that its obligation to plaintiff was limited to $75,000.

The trial court agreed with defendant and, after a jury returned a damages finding of $304,035.70, entered judgment for plaintiff in the amount of $75,000, plus attorney fees and costs. The Court of Appeals affirmed. *Vogelin v. American Family Mutual Ins. Co.*, 221 Or App 558, 191 P3d 687 (2008). We allowed plaintiff's petition for review to answer this question of statutory interpretation—a question left open in *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 179 P3d 633 (2008), *modified on recons*, 345 Or 373, 195 P3d 59 (2008).

We begin our analysis with ORS 742.504(7)(c), because it is central to an understanding of the parties' arguments. The parties agree that ORS 742.504 sets out the minimum required UM and UIM benefit provisions for all automobile insurance policies issued in Oregon. ORS 742.504; ORS 742.502(4).[1] ORS 742.504(7)(c) sets out the mandatory provisions regarding calculation of UM and UIM benefits and provides:

> "*Any amount payable under the terms of this coverage* because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:
>
> "(A)   All sums paid on account of the bodily injury by or on behalf of the owner or operator of the uninsured vehicle * * *, including all sums paid under the bodily injury liability coverage of the policy; and

---

[1] As discussed in *Bergmann v. Hutton*, 337 Or 596, 602, 101 P3d 353 (2004), ORS 742.502(4) provides that UIM coverage is subject to the UM provisions set out in ORS 742.504.

"(B) The amount paid and the present value of all amounts payable on account of the bodily injury under any workers' compensation law, disability benefits law or any similar law."

(Emphasis added.)

In *Bergmann*, 337 Or 596, this court considered the question whether, under ORS 742.504(7)(c)(B), the amount of UIM benefits that an insured was entitled to receive from an insurer was (1) the amount of the insured's damages reduced by workers' compensation benefits; or (2) the amount of the insured's UM liability limit reduced by workers' compensation benefits.[2] To make that determination, the court construed the meaning of the words in the introductory phrase italicized above, "[a]ny amount payable under the terms of this coverage." *Id.* at 602-07. The court distinguished the term "coverage" from the term "policy"—a term that the legislature did not use in the statutory text at issue—and explained that the former was a broad term encompassing "the universe of people, vehicles, and events that trigger the insurer's obligation to pay under the policy," whereas the latter referred to "the specific contract between the insurer and the insured[.]" *Id.* at 604. The court noted that an insurance policy includes limits on the insurer's liability, but insurance "coverage" does not. *Id.* The court therefore concluded that the phrase "[a]ny amount payable under the terms of this coverage" in ORS 742.504(7)(c) meant

"the amount that the insured legally would be entitled to recover from the owner or operator of an uninsured or underinsured vehicle on account of bodily injury sustained by the insured in an accident caused by the ownership or operation of the uninsured or underinsured vehicle."

*Id.* at 610. Because, in the usual case, "that amount would be equal to the insured's total damages," *id.* at 605, the court held that the plaintiff in *Bergmann* was entitled to recover the amount of his total damages less the workers' compensation benefits that he had received. *Id.* at 610.

---

[2] In *Bergmann*, the plaintiff apparently did not contend that the insurer was prohibited by law from deducting the amount paid on behalf of the tortfeasor from the limits of her UIM policy, *Bergmann*, 337 Or at 603 n 7, and that was not an issue in the case.

Responding to the insurer's concern in *Bergmann* that the foregoing interpretation of ORS 742.504(7)(c) could result in an insurer being liable for an amount greater than the UM liability limit of the insured's policy, the court explained that the UM policy limits set the maximum amount of UIM benefit payments that the insured could recover:

> "First, no matter what types of offsets ORS 742.504 permits, the maximum amount for which the insurer is liable under its UM coverage is the limit of liability set out on the declarations page of the policy. ORS 742.504(7)(a). Second, ORS 742.502(2)(a) essentially defines the limit of the insurer's liability in the UIM context. That section provides that UIM benefits are 'equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies.' Nothing in ORS 742.504(7)(c), and certainly nothing in the interpretation of that provision that we announce here, renders those provisions of the statute inoperable. Thus, even if the insured's damages continue to exceed the policy limits after appropriate deductions from the total damages are taken, the maximum amount for which the insurer will be liable is the limit of liability set out in the declarations. And if, after reducing the amount that the insured legally would be entitled to recover in the various ways permitted in ORS 742.504(7), the resulting amount is less than the insurer's liability limit, then that resulting amount is the maximum that the insurer will have to pay. The insurer may have to pay, but the payment will never exceed the liability limits that are stated on the declarations page. No unreasonable result obtains."

*Id.* at 608.

■ ■ This case involves a payment on behalf of a tortfeasor, which is addressed under ORS 742.504(7)(c)(A), not workers' compensation benefits, which are addressed under ORS 742.504(7)(c)(B), but the analysis proceeds from the same introductory phrase, "[a]ny amount payable under the terms of this coverage." For purposes of ORS 742.504(7)(c), that phrase defines the initial figure from which payments, including those made by or on behalf of a tortfeasor, are to be deducted. As noted in *Bergmann*, that figure is, in the usual case, the insured's total damages. Thus, under *Bergmann*,

ORS 742.504(7)(c)(A) means that payments made by or on behalf of a tortfeasor must be deducted from the insured's total damages, as plaintiff contends, not from the insured's UM policy limit, as defendant contends.

However, although our analysis begins with ORS 742.504(7)(c), that is not where it ends. As noted, another statute central to the parties' arguments, ORS 742.502, creates and addresses UM and UIM coverage. Specifically, ORS 742.502(1) requires that all motor vehicle liability policies in Oregon provide UM coverage, and ORS 742.502(2)(a) defines that coverage, as well as UIM coverage. Plaintiff argues that we must interpret ORS 742.502(2)(a) in a manner that is consistent with the interpretation of ORS 742.504(7)(c) that *Bergmann* compels. Defendant responds that the wording of ORS 742.502(2)(a) necessitates a different result and controls over any contrary construction of ORS 742.504(7)(c). Stated differently, defendant asserts that the provisions of ORS 742.504(7)(c) apply to UIM coverage only to the extent that they are not inconsistent with ORS 742.502(2)(a).

Before examining the parties' arguments further, we set out the applicable 2001 version of ORS 742.502(2)(a), separately numbering its four distinct sentences for ease of reference:

(1) "A motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits."

(2) "The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death."

(3) "Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage."

(4) "Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."[3]

---

[3] ORS 742.502(2)(a) has been amended since 2001; for the most part, those amendments are immaterial to our analysis here. We do note, however, that the

The first two sentences of ORS 742.502(2)(a) (2001) address the required minimum limits of UM coverage and do so by referring to the insured's liability insurance limits. The first sentence requires that an insured's UM limits be equivalent to the insured's bodily injury liability limits, unless the insured agrees to lower limits in writing. The second sentence, by incorporating a reference to ORS 806.070, prohibits motorists from electing limits lower than $25,000 (colloquially known as the "financial responsibility limits").

The third sentence of ORS 742.502(2)(a) (2001) addresses the circumstances in which an insurer must provide its insureds with UIM coverage and defines that coverage. UIM coverage is triggered when an insured obtains UM coverage that exceeds the financial responsibility minimum of $25,000. UIM coverage is coverage for "damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage." ORS 742.502(2)(a) (2001).

This court recently discussed the meaning of the third sentence of ORS 742.502(2)(a) (2001), including the above-quoted phrase, in *Mid-Century Ins. Co.*, 344 Or 196. In those consolidated cases, the insureds contended that a "motorist is underinsured if the limit of his or her liability policy is less than the sum of the *damages* sustained by the insured." *Id.* at 206 (emphasis added). The insurers, on the other hand, contended that the determination whether a vehicle is underinsured is made by comparing the limits of the tortfeasor's liability policy to the limits of the insured's UM policy; by the insurer's reasoning, if the limits were equal, as they were in *Mid-Century Ins. Co.*, then the tortfeasor would not be an underinsured motorist, and, thus, the

---

fourth sentence of ORS 742.502(2)(a) now provides (new text in italics; deleted text in brackets):

"Underinsurance *coverage* [benefits] shall be equal to uninsured motorist coverage [benefits] less the amount recovered from other *motor vehicle* [automobile] liability insurance policies."

*See* Or Laws 2007, ch 287, § 2 (adding "coverage" and twice removing "benefits"); Or Laws 2005, ch 235, § 1 (adding "motor vehicle" and removing "automobile"). As noted in *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 200 n 2, 179 P3d 633 (2008), *modified on recons*, 345 Or 373, 195 P3d 59 (2008), the third sentence of ORS 742.502(2)(a) also has been amended since 2001.

insured would not be entitled to recover UIM benefits. *Id.* at 207.

Resolution of that dispute turned on the meaning of the word "coverage," as used in the third sentence of ORS 742.502(2)(a) (2001). This court concluded that, although in *Bergmann* the word "coverage" in ORS 742.504(7)(c) had been construed to refer to an insured's total damages, the legislature had not necessarily used that word in the same sense in the third sentence of ORS 742.502(2)(a) (2001). *Id.* at 209-11. The court reasoned in part that, because the legislature had included a companion reference to "limits" of coverage in the latter provision, *see* 346 Or at 496 (setting out statute), it had intended the word "coverage" in that provision to mean the amount of the UM liability limits in the insured's policy. *Mid-Century Ins. Co.*, 344 Or at 213-14. The court in *Mid-Century Ins. Co.* therefore determined that the threshold question whether a tortfeasor's vehicle is underinsured is determined by comparing the liability limits of the vehicle's insurance against the limits of the insured's UM policy coverage, rather than against the insured's damages. *Id.* at 216.

This case concerns the meaning of the fourth sentence of ORS 742.502(2)(a) (2001), which, again, provided:

"Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

The fourth sentence addresses, as does ORS 742.504(7)(c), the issue of how liability insurance payments recovered from, or on behalf of, a tortfeasor affect an insured's UIM policy benefits. According to that fourth sentence, the initial figure for purposes of subtracting "the amount recovered from other automobile liability insurance policies"—here, the tortfeasor's liability payment—is the insured's "uninsured motorist coverage benefits."

In defendant's view, that phrase from the fourth sentence of ORS 742.502(2)(a) (2001), "uninsured motorist coverage benefits," means the amount that the insured would be entitled to recover from the insurer if the tortfeasor had been uninsured. Because, defendant argues, that amount cannot exceed the UM liability limits in the insured's policy, the

phrase "uninsured motorist coverage benefits" must refer to those limits. Furthermore, defendant contends, this court in *Mid-Century* interpreted the third sentence in ORS 742.502(2)(a) (2001) to refer to an insured's UM liability limits, and there is no reason to conclude that the legislature intended a different meaning when it used similar wording in the fourth sentence.

Plaintiff counters that we must interpret the phrase "uninsured motorist coverage benefits" in the fourth sentence of ORS 742.502(2)(a) (2001) consistently with the *Bergmann* interpretation of the introductory phrase "[a]ny amount payable under the terms of this coverage" in ORS 742.504(7)(c). In other words, both phrases must mean "the amount that the insured legally would be entitled to recover from the [*tortfeasor*]," *Bergmann*, 337 Or at 610, not from the *insurer*. Plaintiff urges that the initial figure for purposes of calculating UIM benefits under ORS 742.502(2)(a) (2001) should be the same as the initial figure mandated by ORS 742.504(7)(c) as determined in *Bergmann*—the insured's total damages. Under plaintiff's interpretation, ORS 742.502(2)(a) (2001) requires the insurer to subtract the tortfeasor's liability payment from the plaintiff's total damages and obliges the insurer to pay its insured the remainder, up to the UM liability limit of the insured's policy. Thus, plaintiff contends that she is entitled to recover from defendant her damages of $304,035.70, minus the payment from the tortfeasor's liability insurance carrier of $25,000, up to her UM liability limit of $100,000—that is, the amount of $100,000.

To support her position, plaintiff emphasizes that, if we were to construe ORS 742.502(2)(a) (2001) to use her UM liability limit as the initial figure in calculating her ultimate recovery, she would receive less than the policy limits for which she bargained. Plaintiff further argues that such an outcome would cause ORS 742.502(2)(a) (2001) to conflict directly with ORS 742.504(7)(c), which, under *Bergmann*, uses damages—not the UM liability limit—as the initial figure from which to calculate payment. Further, plaintiff insists, if a conflict exists between the two statutes, the calculation required by ORS 742.504(7)(c) controls, because ORS 742.502(4) provides that "[u]nderinsurance coverage is subject to ORS 742.504."

For its part, defendant acknowledges that its proposed interpretation of the fourth sentence of ORS 742.502(2)(a) (2001) appears to conflict, on its face, with the interpretation of ORS 742.504(7)(c) that *Bergmann* suggests. However, defendant contends, the two statutes can be read harmoniously by understanding that the reference that ORS 742.502(4) makes to ORS 742.504—that is, that UIM coverage is "subject to ORS 742.504"—is a shorthand method of requiring that Oregon insurance policies include equivalent minimum UM and UIM benefits provisions. As defendant explains it, the legislature understood that circumstances exist in which the provisions of ORS 742.504 cannot, for various reasons, apply to UIM coverage.[4] Defendant concludes that the legislature did not intend the provisions of ORS 742.504 to be controlling when they are inconsistent with the very definition of UIM coverage set out in ORS 742.502(2)(a) (2001).

The wording of the two statutes is difficult to decipher and reconcile, and both parties have strong arguments. Had the legislature used the terms "damages," "policy limits," or "liability limits" in the fourth sentence of ORS 742.502(2)(a) (2001), or had it eliminated that sentence in deference to ORS 742.504(7)(c), we could have discerned its intent more easily. Without that guidance, we are left to parse the meaning of less precise terms and to harmonize provisions that are not easily harmonized. Recognizing the difficulty that we face in reconciling the statutes, defendant directs our attention to the legislative history of the UM and UIM provisions, which, as explained below, we find to be illuminating and determinative. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (in interpreting statutes, court will consider proffered legislative history);[5] *see also generally*

---

[4] Provisions of ORS 742.504 that cannot apply to UIM coverage include provisions for "hit-and-run" and "phantom" vehicles, *see* ORS 742.504(2)(b), (g), because UIM coverage, by its very nature, requires an identifiable and insured tortfeasor. Similarly, other provisions of ORS 742.504 cannot apply to UM coverage, which requires a tortfeasor without insurance. *See, e.g.*, ORS 742.504(4)(d) (concerning only "underinsured motorist benefits").

[5] Citing *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), plaintiff argued in her brief that a resort to legislative history is not justified, because no statutory ambiguity exists. This court issued its decision in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), which refined the

*State ex rel Turner v. Frankel*, 322 Or 363, 374, 908 P2d 293 (1995) (examining legislative history to determine intended relationship between two related statutes).

■    In 1967, the legislature first required that every automobile insurance policy in Oregon provide UM coverage, defined as insurance against the risk of injury or death in an accident arising out of the ownership, maintenance, or use of an "uninsured motor vehicle." Or Laws 1967, ch 482, §§ 1, 2 (originally *former* ORS 743.786(1) (1967) and *former* ORS 743.789 (1967); now ORS 742.500(1) and ORS 742.502). In that same enactment, the legislature set out the terms of UM coverage in the form of a "model" policy and required that insurers provide UM coverage no less favorable to the insured than those set forth in its statutory "model." *Vega v. Farmers Ins. Co.*, 323 Or 291, 301-02, 918 P2d 95 (1996); *see also* Or Laws 1967, ch 482, § 3 (originally *former* ORS 743.792 (1967); now ORS 742.504).[6] The UM statutes originally required that UM coverage have limits equal to or greater than the amounts required by the Financial Responsibility Law, ORS chapter 806. Or Laws 1967, ch 482, §§ 1, 3 (originally *former* ORS 743.786(1) (1967) and *former* ORS 743.792(2)(d)(A) (1967); now ORS 742.500(1) and ORS 742.504(2)(k)(A)). In 1975, the legislature required insurers to offer higher UM limits whenever a policy provided liability coverage with higher limits. Or Laws 1975, ch 390 (originally *former* ORS 743.789(2) (1975); now ORS 742.502(2)(a) (sentences one and two)).[7] In general, the purpose of UM coverage was to place the injured policyholder in the same position as if the tortfeasor had had liability insurance. *Peterson v. State Farm Ins. Co.*, 238 Or 106, 111-12, 393 P2d 651 (1964).

Because UM insurance paid benefits to an insured only when the vehicle that had caused the injury had no

---

statutory construction analysis set out in *PGE*, after plaintiff filed her brief. In any event, here, the competing statutes that give rise to the parties' dispute certainly are capable of more than one meaning, and we find the history to be helpful in ascertaining the legislature's intent in that regard.

[6] *Former* ORS 743.792(7)(c) (1967) is virtually identical to current ORS 742.504(7)(c).

[7] The legislature later required that an insurer provide as much UM coverage as liability coverage, unless the insured elected otherwise, as now set out in the first two sentences of ORS 742.502(2)(a).

insurance whatsoever, circumstances existed in which an insured could recover more insurance benefits when injured by an uninsured driver than when injured by a driver who was insured, but at a level insufficient to pay the injured driver's damages in full. So, for example, if an insured with a $100,000 UM liability limit were injured by an uninsured driver, suffering damages of $75,000, the insured would not be able to recover any insurance benefits from the tortfeasor, but could recover the amount of $75,000 under his or her own UM policy. However, if the insured were injured by an insured tortfeasor with a liability limit of $25,000, the insured could recover only that amount from the tortfeasor and could not recover any additional benefit from its own insurer. In that example, the insured would recover $50,000 less in insurance benefits when injured by an insured driver than the insured would recover when injured by an uninsured driver.

The legislature confronted that incongruity in 1981 by enacting legislation that required insurers to provide their insureds with coverage for injuries inflicted by underinsured, as well as by uninsured, vehicles. Or Laws 1981, ch 586.[8] That legislation was drafted and considered by the 1980 Interim Joint Committee on the Judiciary before the commencement of the 1981 legislative session; the legislation later moved through the 1981 session as Senate Bill (SB) 31 (1981). As we shall explain, we have reviewed the records from the proceedings of the various committees that considered the legislation, and it is evident from that review that the legislature's purpose in enacting the legislation was to

---

[8] As originally enacted, the underinsurance provisions currently set out in the third and fourth sentences of ORS 742.502(2)(a), and also currently set out in ORS 742.502(4), provided:

"* * * Offers of uninsured motorist coverage larger than the amounts required by ORS chapter 486 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies.

"* * * Underinsurance coverage shall be subject to [*former*] ORS 743.792 [(1981) (now ORS 742.504)]."

Or Laws 1981, ch 586, § 1.

ensure that, whether a tortfeasor had some insurance or no insurance, the insured would be able to recover the same amount in insurance payments. When the tortfeasor had no insurance, the UM policy provisions would be the only source of payment. When the tortfeasor had some insurance, the tortfeasor's liability payment would be a secondary source of payment.

Much of the discussion before the Interim Joint Committee on the Judiciary that preceded the 1981 legislative session bears on our analysis here. For example, Frank Howatt, an assistant insurance commissioner, explained to the committee how a tortfeasor's liability payments would be applied under the new UIM legislation:

> "[T]he amount of insurance you would recover [from the tortfeasor] would be an offset, of course, against the [UM] limit that you carry."

Tape Recording, Joint Committee on the Judiciary, Subcommittee on Insurance, Sept 12, 1980, Tape 9, Side A. Howatt stated that he wanted the wording to make it "obvious that *the intent was to cover this gap* that arises when the other party is not uninsured but [he] is insured and your own policy [limit] is a higher limit and the *offset should be applied against that higher limit rather than simply eliminating the coverage.*" *Id.* (emphasis added). Howatt later explained, "You don't collect the full benefit under the uninsured [motorist policy]; you collect the difference between that and * * * the other party's insurance." Tape Recording, Joint Committee on the Judiciary, Oct 5, 1980, Tape 1, Side A.

Others who spoke before the Interim Joint Committee on the Judiciary about the draft legislation echoed that understanding. Noam Stampfer, counsel to the committee and the drafter of the proposed legislation, stated,

> "What this legislation would do is to track underinsurance and uninsurance [benefits]. Rather than stack [UIM and UM benefits] one on top of the other, it would just track them[,] so that the underinsurance would fill the gap between the amounts received from the other party's policies and the amount that the person is insured to under that person's uninsured motorist coverage."

*Id.* Senator Vern Cook provided an example of how the UIM coverage would work:

> "[I]f he [*i.e.*, the tortfeasor] has the minimum policy [limit] and you [*i.e.*, the insured] have a 50/100 liability policy which gives you 50/100 [in] uninsured [motorist] coverage if he is uninsured, this would mean that, if he has only $15[,000], you'll also get an extra $35[,000] on your own policy for uninsured [motorist] coverage. So you would collect up to $15[,000] from the third party and then up to $35[,000] from your own [policy]."

*Id.*

   Plaintiff does not dispute that, in general, the statutory UIM requirements were designed to fill a "gap" in coverage. In plaintiff's view, however, statements by other proponents of the legislation demonstrate that the legislature intended that UIM benefits fill the gap between the tortfeasor's liability limits and the insured's *damages*, rather than a gap between the tortfeasor's liability limits and the insured's UM *liability limits*. Plaintiff points to statements by Senator Ed Fadeley and Tom Bessonette of Oregon Mutual Insurance. Speaking during a hearing before the Joint Committee on the Judiciary, Senator Fadeley remarked:

> "Suppose that I sued the other guy, and I only got $10,000 as a judgment, but I've got a $50,000 uninsured motorist policy under this statute, with underinsured mandated as part of it. So I'm supposed to get $50,000. I wonder, if that last sentence and the word 'recovered' would allow me to get $40,000 in that instance, when what I recovered was $10[,000] and what I had in my policy was $50[,000]."

Tape Recording, Joint Committee on the Judiciary, Oct 5, 1980, Tape 1, Side A. Howatt then asked Senator Fadeley if his question was whether,

> " 'if the man only got a judgment for $10,000, that he would recover some larger amount by virtue of this underinsurance?' No, it says here, as I understand it, * * * [the legislation] say[s] underinsurance benefits shall be equal to uninsured motorist coverage benefit. Not [that] the uninsured motorist coverage benefit would be $10,000 wouldn't it—you don't recover more under your uninsurance motorist coverage than the amount of the judgment against the other driver. If you start with a $10,000 judgment, that

would be payable under uninsurance, but then the existence of the other party's insurance would normally cancel that benefit under your policy."

*Id.*

Contrary to plaintiff's position, that exchange indicates that Senator Fadeley was concerned that the injured party not recover more than the amount of the damages that he or she was entitled to recover, not that the injured party be able to recover more than his or her UM liability limits. In fact, later in the proceedings, Senator Fadeley stated:

"If I was looking at it from an insurance salesman's point of view, the intention is to allow me to buy an increase in my uninsured motor[ist] vehicle coverage and to have the increase in my motor vehicle insurance coverage cover the gap between low insurance and the benefits I bought."

*Id.*, Tape 2, Side A.

The testimony of Bessonette also is contrary to plaintiff's position. Testifying before the Senate Committee on Insurance, Banking, and Retirement, which considered SB 31 during the 1981 legislative session, Bessonette stated:

"Many people have been involved in automobile crashes and they were unable to collect a sufficient amount of damages for their injuries because there just wasn't enough insurance on the other party. * * * This bill provides what we now call underinsurance. If you hit and collide with someone who has a $15,000 policy [limit] and you have a $100,000 injury, [then] you would collect $15,000 from the wrongdoer and $85,000 from your own insurance company and you would be made well."

Tape Recording, Senate Committee on Insurance, Banking, and Retirement, SB 31, Jan 23, 1981, Tape 5, Side A.

Plaintiff correctly points out that no one who spoke about the 1981 UIM legislation specifically addressed the gap between a tortfeasor's liability limits and an injured party's damages, but plaintiff does not gain by that argument. It is evident to us that the legislature did not do so because it focused on the gap between a tortfeasor's liability limits and the injured party's UM liability limits.

■ Our review of the legislative history surrounding the enactment of the UIM legislation convinces us that defendant's interpretation of the fourth sentence of ORS 742.502(2)(a) (2001) is correct and that that provision controls the outcome here. The legislature intended that insurers be permitted to offset tortfeasor liability payments against the UM liability limits set out in their insureds' policies. Thus, the phrase "uninsured motorist coverage benefits" in the fourth sentence of ORS 742.502(2)(a) (2001) means the UM liability limits in the insured's policy, as defendant argues, and not damages, as plaintiff argues. And, the provision in ORS 742.502(4) that "[u]nderinsurance coverage is subject to ORS 742.504" does not mean that the latter statute controls in the event of a conflict, as plaintiff contends. Rather, it means that the model policy terms set out in the many subsections of ORS 742.504, which before 1981 applied to only UM coverage (*see* 346 Or at 501-02, 502 n 8 (so explaining)), apply equally to the mandated UIM coverage, to the extent that such an application is consistent with the UIM mandate set out in ORS 742.502(2)(a) (2001). Stated differently, the legislature intended the third and fourth sentences of ORS 742.502(2)(a) (2001) to establish the parameters of the mandated minimum UIM coverage.

In sum, we conclude that the applicable statutes that governed the terms of the insurance policy that plaintiff purchased from defendant permitted defendant to calculate plaintiff's UIM benefit by subtracting the tortfeasor's liability payment from plaintiff's UM liability limit. Defendant could have offered, and plaintiff could have purchased, additional UIM benefits that would have provided plaintiff greater protection against injury by an underinsured motorist, but that greater protection was not required by Oregon law. The trial court therefore properly entered judgment for plaintiff in the amount of $75,000.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.